## ALLEN v. BISSINGER & CO.

No. 3941.   Decided September 17, 1923.   (219 Pac. 539.)

1. CONTRACTS—NO CONTRACT UNLESS DEFENDANT ACCEPTED WHAT PLAINTIFF OFFERED. Where plaintiff offered to furnish a copy of the official report of the Interstate Commerce Commission's proceedings with respect to a proposed consolidation of freight classifications, unless defendant's answer, requesting a copy of "your official report of the different charges in handling freight" was an acceptance of what plaintiff offered, there was no contract.

2. CONTRACTS—INTENT OF DEFENDANT TO ACCEPT THING OFFERED BY PLAINTIFF DETERMINED BY EXPRESSED INTENTION. The inquiry whether defendant's acceptance related to the same thing offered by the plaintiff is limited to evidence of the expressed intention of the parties, by words or acts, as it is only from the conduct of the parties that the court can form any conclusion as to their intention.

3. CONTRACTS—ANSWER TO OFFER HELD AN ACCEPTANCE THEREOF. Where the plaintiff offered to furnish a copy of the official report of the Interstate Commerce Commission's proceedings, with respect to a proposed consolidation of freight classifications, defendant's answer requesting a copy of "your official report of the different changes in the handling of freight," *held*, an acceptance of the offer.

4. CONTRACTS—THERE BEING NO CLAIM OF FRAUD, THE FACT THAT REPORTS WERE VALUELESS TO DEFENDANT AND COST MORE THAN EXPECTED DOES NOT AVOID THE CONTRACT. There being no claim of fraud, the fact that reports furnished defendant pursuant to contract were valueless to him and exceeded his expectations in volume and price does not relieve him from the obligations of his contract merely because his bargain was burdensome and unprofitable.

Appeal from District Court, Third District, Salt Lake County; *Wm. M. McCrea*, Judge.

Action by Franklin W. Allen against Bissinger & Co. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

Appeal from Third District

*J. E. Darmer* and *Wilson McCarthy*, both of Salt Lake City, for appellant.

*Booth, Lee, Badger & Rich,* of Salt Lake City, for respondent.

CHERRY, J.

This is an action at law by the plaintiff to recover fees for furnishing defendant a copy of the official report of certain proceedings before the Interstate Commerce Commission. A trial before the court resulted in findings and judgment for the plaintiff, from which the defendant has appealed.

The sufficiency of the evidence to support the findings is the only question to be determined.

There is no substantial conflict in the evidence, the most important part of which consists of written communications between the parties.

The plaintiff resided in New York and was the official reporter for the Interstate Commerce Commission, and the defendant was a corporation engaged in buying and selling pelts, hides, and furs at Salt Lake City, Utah.

On July 20, 1918, plaintiff sent letters to various large shippers of freight, including defendant, as follows:

"Re Consolidated Classification, Case No. 10204.

Dear Sir: At the request of the Director General of Railroads the Interstate Commerce Commission will conduct an investigation concerning the reasonableness and propriety of the descriptions, rules, regulations, ratings, and minimum weights provided in proposed consolidated freight classification No. 1, prepared by the special committee appointed by the United States Railroad Administration to consolidate the official, western, and southern classifications. Hearings will be held in several cities beginning at Boston, August 1, and concluding at Atlanta, September 19.

"A summary of the changes recommended in the proposed consolidated classification is inclosed. As these are of unusual interest and importance, those who want copies of the official reports of these hearings, which will be furnished at the usual rate fixed by the Commission, should advise us at once so that we may make enough to supply them without delay."

On July 31, 1918, the defendant wrote plaintiff:

"We will be interested in your official report of the different changes in the handling of freight and would ask you to put our name down for a copy of same."

## On August 5, 1918, the plaintiff wrote defendant:

"Please accept our thanks for your order of July 31, for one copy of the official report of the proceedings in the Consolidated Classification Case No. 10204, which will have our prompt attention."

In pursuance of the correspondence, the plaintiff prepared a copy of the official report of the hearings held up to August 17, which was shipped to defendant by express on September 13, 1918; and later prepared a copy of the official report of the hearings held subsequently, which was shipped to defendant by express on October 5, 1918.

On October 10, 1918, the defendant wrote the plaintiff:

"We are just in receipt of another allotment of your Interstate Commerce Commission, and want to say to you that this is something that we cannot use at all and there is no use of you sending us anything further. We wish to return you what we have on hand at present and pay you anything that is reasonable for the trouble that you have been put to.

"In ordering these from you in the first place we expected to find all the information we wanted in one volume and did not think we were going to get a full library.

"Trusting you will look at this matter as a business proposition, with kindest regards."

## To this the plaintiff replied on October 15, 1918:

"Replying to your letter of October 10, if agreeable to you, we will accept your cancellation effective at the end of the hearing of September 27. A copy of the report having already been made for you up to that point. We cannot accept cancellation of your order for that part of the report, because we cannot return to our employees and get credit for the labor which they have expended in making the copy for you."

## Defendant wrote on October 21, 1918:

"Replying to yours of the 15th, would like you to let us know the cost of the literature we have already received. As stated to you before, this is no value to us whatever, and while we are perfectly willing to stand everything that is necessary to put you in the clear, we would think it more to your interest and all concerned, if you could manage to place this information with some other firm to whom it may be of some value."

## October 28, 1918, the plaintiff wrote:

"Replying to your letter of October 21, if an opportunity develops later in which we can use your copy elsewhere, we will communicate with you."

On November 4, 1918, and November 13, 1918, plaintiff prepared and shipped the copy of official reports of the remaining hearings had up to September 27, 1918, the various shipments together making one complete copy of the official reports of the hearings had between August 1, and September 27, aggregating 8,380 pages, for which plaintiff was permitted to charge at the rate of 12½ cents per page.

Plaintiff sent defendant a statement of the amount due, amounting to $1,047.50, and received in response the following letter dated December 20, 1918:

"Your first and only statement of prices and account under date of December 14, just received. We are certainly surprised at the price you attempted to charge for same, and amount of these goods attempted to be put upon us.

"Referring once again to this matter, as stated before, these reports are absolutely useless to us, and we absolutely refuse to pay this account, and hold these goods subject to your orders."

On January 3, 1919, the plaintiff wrote:

"Replying to your letter of December 20, our charge for these reports is the rate fixed by the Commission in the inclosed order, and no lower rate has been paid by any one for the official reports of hearings before the Commission in the last ten years. It is, in itself, a fair and reasonable rate, and when compared with the rates charged for similar reports of investigations by other public bodies, it is an exceedingly low rate. The statutory rate for reports of hearings before the New York Public Service Commission and for proceedings in the New York Supreme Court, is 25 cents per page and the stautory rates in many states are 15 cents per folio of 100 words, which is equivalent to about 35 cents per page.

"Obviously no one could tell in advance how extensive the reports of this investigation would be, but our letter of July 27th gave you all the information we had, including the places of the hearings and the dates they were to begin, from which you must have seen that hearings were to be held all over the country and last a couple of months."

The manager of defendant corporation testified that during the summer of 1918, he had had difficulties with respect to shipping regulations; that his attention was attracted to a circular inclosed in the plaintiff's first leter, purporting to

be a summary of the important changes recommended in the proposed consolidated freight classification; that he had this circular in mind when he wrote the letter dated July 31. He denied receiving the plaintiff's letter dated August 5. He stated that the material sent him was not what he had ordered; that none of the shipments contained any report of the different changes relating to freights; that the material sent by the plaintiff was of no value to him; that he did not use it in any way; and that it was of no value whatsoever to the defendant in the business in which it was engaged.

Upon substantially the foregoing evidence, the trial court made findings of fact to the effect that the defendant had ordered the copy of reports offered by plaintiff, that in pursuance of the order the plaintiff had made for, and delivered to the defendant 8,380 pages of copy at 12½ cents per page, and concluded that plaintiff was entitled to a judgment accordingly.

It is insisted by appellant that the correspondence did not create a contract because the offer contained in plaintiff's letter was not accepted, and hence the minds of the parties never met. It is not contended that the letter relied upon as an acceptance contained anything which changed, added to, or qualified the terms of plaintiff's offer, but it is claimed that plaintiff offered to furnish a copy of the hearings, etc., of the Interstate Commerce Commission, and that the defendant agreed to take a copy of an ''official report of the different changes in the handling of freight,'' and that therefore the parties did not refer to the same thing in the transaction, and never agreed upon the subject-matter of the contract.

Of course, if the defendant's letter was not an acceptance of the particular thing plaintiff offered, there was no contract. The parties must contract ad idem. 13 C. J. 376.

The precise question thus presented is whether there is substantial evidence to warrant the conclusion, that the defendant's acceptance related to the same thing offered by the plaintiff, and therefore to support the finding of the trial court that a contract was made.

The inquiry is limited to evidence of the expressed intention of the parties, by words or acts, or both, as it is only from the words and conduct of the parties that a court can form any conclusion as to their intention.

In 13 C. J. 265, the rule is stated as follows:

"The apparent mutual assent of the parties, essential to the formation of a contract, must be gathered from the language employed by them, and the law imputes to a person an intention corresponding to the reasonable meaning of its words and acts. It judges of his intentions by his outward expressions and excludes all questions in regard to his unexpressed intention. If his words or acts, judged by a reasonable standard, manifest an intention to agree to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of his mind upon the subject."

The offer of the plaintiff was to furnish one specific thing, viz. a copy of the official report of the hearings. There was no uncertainty or ambiguity in the offer. The thing offered was described with fairness and verity. The defendant's response to the offer was that—

"We will be interested in your official report of the different changes in the handling of freight, and would ask that you put our name down for a copy of same."

The defendant's letter does not describe the official report with exactness. Considered by itself, its meaning in that respect might be doubtful. But viewed in the light of the plaintiff's offer the reply is responsive and relevant. Plaintiff described and offered but one official report. Defendant referred to and requested a copy of "your official report," etc., which phrase in ordinary commercial practice would be understood to sufficiently identify the matter referred to. The additional descriptive words used, "of different changes in the handling of freight," while lacking in precision, are fairly referable to the subject of the plaintiff's offer. Especially is this true, since it is not made to appear that there was any other official report known to the parties to which the acceptance could refer. Under the circumstances, we think the communications of the parties above referred to, judged by a reasonable standard, manifest an in-

tention to agree upon the same thing, and that the evidence was sufficient, as a matter of law, to support the finding of the trial court that the plaintiff's offer was accepted by the defendant. The subsequent conduct of the parties lends much force to the conclusion reached. Upon receipt of defendant's letter, plaintiff immediately wrote an acknowledgment of "your order of July 31, for one copy of the official report of the proceedings in the Consolidated Classification Case No. 10204," etc., and subsequently furnished an installment of the same which defendant accepted without objection. When a second installment was later furnished, defendant complained, not because the wrong thing was furnished, but because the quantity was more than it expected. To use defendant's words:

"In ordering these from you in the first place we expected to find all the information we wanted in one volume, and did not think we were going to get a full library."

The later complaints of defendant were that the reports were of no value to defendant, that it could not use them, and that the price charged was surprising. No objection upon the grounds that the defendant did not contract for the particular reports furnished was made until this action was filed.

There is no claim of misrepresentation or fraud against the plaintiff. It may well be that the reports proved useless and of no value to defendant, and that in volume and price they exceeded its expectations, but, in the absence of some misconduct on the part of the plaintiff, the defendant cannot be relieved from the consequences of its improvidence, merely because the bargain is burdensome and unprofitable.

Judgment affirmed.

WEBER, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.