329 P.2d 410

A. L. REESE, Plaintiff and Appellant,

v.

Thomas R. HARPER, Defendant and Respondent.

No. 8836.

Supreme Court of Utah.

Sept. 5, 1958.

Preston & Harris, Logan, for appellant.

Sherma Hansen, Brigham City, Olson & Calderwood, Logan, for respondent.

CROCKETT, Justice.

A. L. Reese sued Thomas R. Harper for $1,500 as a real estate commission for attempting to sell Harper's farm. A jury made findings adverse to plaintiff, and judgment was entered accordingly, from which he appeals.

The problem of concern here is the nature and extent of the duty a real estate:

agent owes to his principal, and whether plaintiff discharged it.

Mr. Reese is a licensed real estate broker, doing business as Atlas Realty Company in Logan, Utah. He contacted Mr. Harper and procured him to list for sale his dry farm of 700 acres in Hansel Valley in western Box Elder County. The listing authorized Reese to find a buyer at $45,000 or such other price as might be agreed upon. Five days later Reese proposed to Harper a deal with one Ezra J. Zollinger for $30,000. Reese presented to Harper a document entitled "Receipt and Agreement to Purchase" (hereinafter called Receipt). The latter looked it over cursorily and signed.

In view of the contentions of the parties, discussed below, these facts are of critical importance: the figure $30,000, representing the purchase price, was filled in the printed form by hand; also on a separate line, noticeably separated from the other lines of fine print in the document were the words: "Encumbrances, except None"; the word "None" was also in handwriting. Due to such fact, and that the handwriting is much larger than the fine print of the document, the eye can pick out the $30,000 and the line with the words "Encumbrances, except None," much easier than the other parts thereof.

Thereafter a contract of sale and escrow agreement were prepared and presented to Mr. and Mrs. Harper. By it they were to receive $30,000 but out of it they were required to pay the encumbrances on the property, including a mortgage balance of $8,500, and some crop mortgages, the exact amount of which is not shown in the record. The Harpers contend that the obligations aggregated substantially $15,000 and the trial court so found. Just what the evidence will support as to encumbrances above the $8,500 mortgage is not of controlling importance. The Harpers' version of the proposed transaction, which was accepted by the jury and the trial court, was that Mr. Harper had understood that they would receive $30,000 net for their property, and that the purchaser would assume and pay the encumbrances. This would give them somewhere reasonably near the $45,000 they were asking; whereas if they had to pay the encumbrances out of the $30,000, they would get less than half the $45,000 at which Reese procured the listing. Defendant points out that the Receipt, particularly the parts referred to above, readily gives an impression consistent with their understanding.

The plaintiff Reese argues that the Receipt, properly read and understood, is clearly an offer to sell the farm for $30,000 free of encumbrances, as provided in the proposed contract which the Harpers refused to sign; that Harper is therefore bound to pay the commission on the deal because Reese procured Zollinger as a

ready, willing and able purchaser upon the terms Harper had agreed to. Mr. Reese further avers that as between him and Harper, their dealings were at arm's length; that he was under no particular duty to coddle and "spoonfeed" Harper; that inasmuch as the latter had ample opportunity to read the Receipt and thereafter voluntarily signed it, he is precluded from questioning its contents and is bound by it.

■ The above contention is sound as between people dealing with each other under usual circumstances. But the relationship of real estate agent and client makes the situation quite different. The agent is issued a license and permitted to hold himself out to the public as qualified by training and experience to render a specialized service in the field of real estate transactions. There rests upon him the responsibility of honestly and fairly representing the interests of those who engage his services, and upon failing to do so his license may be revoked.[1] Accordingly, persons who entrust their business to such agents are entitled to repose some degree of confidence that they will be loyal to such trust and that they will, with reasonable diligence and in good faith, represent the interests of their clients. Unless the law

demands this standard, instead of being the badge of competence and integrity it is supposed to be, the license would serve only as a foil to lure the unsuspecting public in to be duped by people more skilled and experienced in such affairs than are they, when they would be better off taking care of such business for themselves.

■ Because of the specialized service the real estate broker offers in acting as an agent for his client there arises a fiduciary relationship between them;[2] it is incumbent upon him to apply his abilities and knowledge to the advantage of the man he serves; and to make full disclosure of all facts which his principal should know in transacting the business.[3] Failure to discharge such duty with reasonable diligence and care precludes his recovery for the service he purports to be rendering.

In Reich v. Christopulos[4] the broker had informed his principal that he had a check for $5,000, intimating that it was an outright down payment on the transaction; whereas, in fact the check was given only subject to conditions not disclosed to the principal. It was held that this failure to disclose was a breach of duty precluding recovery.

1. 61–2–11, U.C.A.1953.

2. See St. Germain v. Watson, 95 Cal.App. 2d 862, 214 P.2d 99; Haymes v. Rogers, 70 Ariz. 408, 222 P.2d 789, 17 A.L.R.

2d 896; Anderson v. Thacher, 76 Cal. App.2d 50, 172 P.2d 533.

3. See 8 Am.Jur., Brokers, Sec. 86.

4. 123 Utah 137, 256 P.2d 238.

■ A case closely analogous to the instant one is Duncan v. Barbour.[5] A broker was authorized to find a sale for property on terms of 20% cash, payments over a period not less than five years, and bearing 4½% interest. The broker procured a deal for a substantially different down payment and certain other differences in terms. He drew up a contract and submitted it to the seller. At the trial there was a dispute as to whether the seller had in fact understood and agreed to the new terms. The court observed that the broker had not discharged his duty in that he had not explained the contract to his client nor called his attention to the variance in terms. Upon suit of the broker for his commission the court held:

"Under these circumstances it was the duty of the agent to disclose to his principal the vital differences in the terms * * *. This duty was not discharged by simply handing to the owner an unsigned contract * * *. It was his duty to inform his principal of all facts which might influence his principal in accepting or rejecting the offer. An agent is not entitled to recover until he has fully performed this duty * * *".

We regard the doctrine just stated as salutary and as controlling here. Without burdening this opinion with a discussion of the authorities cited by the plaintiff, we observe that a careful reading will disclose that they are clearly distinguishable from the instant situation.[6]

It is pertinent to observe that the broker Reese had Mr. Harper at even more disadvantage than might normally be expected. The wide difference in experience and business acumen resulting in the parties being in an unequal position for bargaining are things which the court and jury were entitled to take into consideration in determining the matters in contention between them.[7] Mr. Harper was a farmer, obviously inexperienced in business; was hard of hearing and therefore had some difficulty in conversing with others; and in addition thereto the court made an express finding indicating that he was somewhat inept and lacking in acumen with respect to business affairs.

■ The issue was submitted to the jury as to whether Mr. Reese had discharged his

5. 188 Va. 53, 49 S.E.2d 260, 265.

6. Garff Realty Co. v. Better Buildings, Inc., 120 Utah 344, 234 P.2d 842; Johnson v. Allen, 108 Utah 148, 158 P.2d 134, 159 A.L.R. 256; Ashworth v. Charlesworth, 119 Utah 650, 231 P.2d 724; Little v. Fleishman, 35 Utah 566, 101 P. 984, 24 L.R.A.,N.S., 1182; Curtis v. Mortensen, 1 Utah 2d 354, 267 P.2d 237; Blackburn v. Bozo, 82 Utah 556, 26 P.2d 542.

7. Lewis v. White, 2 Utah 2d 101, 269 P.2d 865.

**124**

duty hereinabove discussed. It found that he "did not sufficiently inform or make clear to Mr. Harper who was to pay the mortgage and encumbrances"; and further that he did not "fairly disclose to Mr. Harper all material facts which Mr. Reese knew * * * concerning the transaction * * *." In view of such finding, which is supported in the evidence, the plaintiff Reese cannot here contend that he discussed and made plain the contents of the Receipt and the nature of the transaction to Mr. Harper. In fact, during cross-examination Mr. Reese manifested a somewhat indifferent attitude toward the suggestion that he should have done so. He observed that "it isn't often that all the details of an earnest money agreement receipt is read," implying that it was unnecessary to do so, but that the customer should rely upon the agent, which is exactly what Mr. Harper did.

There being support in the record for the determination made below: that the plaintiff had not discharged his duty in connection with the attempted sale of the property for the defendant, the judgment is affirmed. Costs to defendant.

McDONOUGH, C. J., and WADE, WORTHEN and HENRIOD, JJ., concur.