368 P.2d 597

Carol R. BUNNELL, Plaintiff and
Respondent,

v.

Wilford Lester BILLS, Rhoda I. Bills, J.
Ervin Stevens, Violet M. Stevens, Lynn H.
Coombs, Lois B. Coombs, J. Armont Wil-
lardsen, Dorothy B. Willardsen, and Wil-
lardsen Motor Lodges, Inc., a Utah cor-
poration, Defendants and Appellants.

No. 9505.

Supreme Court of Utah.

Feb. 7, 1962.

Kirton & Bettilyon, Salt Lake City, for appellants.

Romney, Boyer & Ronnow, Salt Lake City, for respondent.

CALLISTER, Justice.

Plaintiff brought this action seeking specific performance of a contract, or, in the alternative, damages for the breach thereof. The trial court, sitting without a jury, denied specific performance, but awarded plaintiff damages in the sum of $5,000 against defendants, Stevens, Bills and Coombs, who appeal. The action against Willardsen Motor Lodges was dismissed.

On November 3, 1959, defendants, Bills and Stevens, entered into a Uniform Real Estate Contract whereby Bills was to sell to Stevens the Alta Motor Lodge, Salt Lake City, together with certain personal property and furnishings. Title was to be conveyed upon payment of the full purchase price. The purchase price of $274,446, without interest, was to be paid in annual installments of $14,000, after a down payment of $10,000. At trial this price was agreed to be the equivalent of a purchase

price of $175,000 at 6% interest on the unpaid balance.

November 20, 1959, Stevens entered into a "Commercial Listing" and "Sales Agency Contract" with Realty Inc., through its agent, Schmidt, wherein Realty Inc. was given exclusive right to sell the Alta Motor Lodge' and certain personal property used in the operation of the Alta. Realty Inc. was given authority to execute, in Stevens' name, a preliminary contract of sale, and Stevens agreed to execute the necessary papers for conveyance of the property to a buyer.

On November 23, 1959, plaintiff Bunnell deposited a check for $9,500 with Schmidt and signed an "Earnest Money Receipt and Offer to Purchase" (hereafter called "receipt") agreeing to purchase the Alta Motor Lodge and personal property designated on an attached list for a price of $175,000 at 6% interest. The down payment was to consist of Bunnell's property at 904 East 1st South, Salt Lake City, "valued at $15,-000" along with the aforesaid deposit of $9,500. Bunnell agreed to pay $7,000 in 1960 and $14,000 each year thereafter until the full purchase price was paid. The receipt was signed by both Stevens and Bunnell.

On February 5, 1960, a written agreement was entered into whereby Bills and Stevens released each other from all responsibility and liability incurred under their Uniform Real Estate Contract of November 3, 1959. On this same day, Bills, through a Uniform Real Estate Contract, sold the Alta Motor Lodge with its personal property to Willardsen Motor Lodges. The purchase price of $180,000 at 6% interest was to be paid in annual installments of $12,000 after a down payment of $16,500 had been made.

The facts surrounding each of these transactions will be brought out in the discussion of the points raised by appellants.

From the trial court's judgment for $5,-000 jointly and severally against defendants, Stevens, Bills and Coombs, they have appealed, asserting that the trial court erred in finding:

I. That Bunnell and Stevens had entered into a valid and binding contract;

II. That Bunnell had been damaged by Stevens' nonperformance of the alleged contract; and

III. That Coombs and Bills had conspired with Stevens to cause a breach of the alleged contract.

I.

That an "Earnest Money Receipt and Offer to Purchase" may constitute a binding contract, has often been recognized by this court,[1] and is not now disputed by

1. Reich v. Christopulos, 123 Utah 137, 256 P.2d 238; Reese v. Harper, 8 Utah 2d 119, 329 P.2d 410; Andreasen v. Hansen, 8 Utah 2d 370, 335 P.2d 404.

defendants. Defendant Stevens contends, however, that he is not bound by this receipt because there had been no meeting of the minds of the parties. In support of this contention Stevens argues, first, that the receipt must be interpreted to mean that, as consideration for the transfer of the Alta Motor Lodge, Bunnell was to transfer her property located at 904 East 1st South by a Uniform Real Estate Contract, and because the receipt fails to set forth certain provisions of such contract, it was merely an agreement to agree. Secondly, defendant contends that because the receipt fails to set forth the personal property which was to be transferred with the Alta and which was to be transferred with Bunnell's property, the whole agreement was too indefinite to constitute a meeting of the minds.

A binding contract can exist only where there has been mutual assent by the parties manifesting their intention to be bound by its terms.[2] Furthermore, a contract can be enforced by the courts only if the obligations of the parties are set forth with sufficient definiteness that it can be performed.[3]

Is there substantial evidence to support the trial court's finding that the defendant, Stevens, had manifested an intention to be bound by the terms that were offered by Bunnell?[4] And if so, in light of the circumstances under which the agreement was entered, can the intention of the parties be ascertained with reasonable certainty?[5]

Stevens claims that Realty Inc., represented by Schmidt, was acting as Bunnell's agent for the purpose of procuring a sale of the Alta, and for this reason the instrument in question was drafted by Schmidt as her agent and must be construed most strongly against her. The fact that three days prior to the execution of the receipt Stevens had entered into a "Commercial Listing" and "Sales Agency Contract" with Realty, Inc., makes the validity of the contention that Realty, Inc., acted as Bunnell's agent extremely dubious. Usually the real estate agent is considered to be the agent of the seller.[6] It is possible that Realty, Inc., was acting as the agent of both Stevens and Bunnell, but there is no evidence to show that it was the agent of only Bunnell. In any event, if the intention of the parties can be ascertained with reasonable certainty it must be given effect, and the rule of construction presented by Stevens will not be applied.[7]

2. Allen v. Bissinger and Co., 62 Utah 226, 219 P. 539, 31 A.L.R. 376.

3. Hansen v. Snell, 11 Utah 2d 64, 354 P. 2d 1070.

4. Supra, note 2.

5. Maw v. Noble, 10 Utah 2d 440, 354 P. 2d 121.

6. See Reese v. Harper, 8 Utah 2d 119, 329 P.2d 410.

7. Supra, note 5.

Stevens contends that because of the provision concerning Bunnell's property at 904 East 1st South, the receipt was at most an agreement to agree. Stevens argues that because the receipt did not set forth the "price, terms, interest, etc." relating to the Bunnell property, it was to be handled as a separate transaction. However, when the receipt is interpreted under the circumstances that existed at the time of its creation, and in light of the conduct and statements of the parties,[8] it is clear that the transfer of Bunnell's property was intended as part of the whole agreement. The fact that part of the performance is that the parties will enter into a contract in the future does not render the original agreement any less binding.[9] The transfer of Bunnell's property was no more a separate transaction than were the cash payments that Bunnell had agreed to make in the future. The receipt provides that "all rights and interest in (Bunnell's) property (are) * * * valued at $15,000" and are to be transferred to Stevens "on delivery of deed (to the Alta Motor Lodge) * * * which shall be on or before January 1, 1960." When Stevens contracted to buy the Alta from Bills there was no provision as to any interest to be charged. At trial he had no doubt about the binding effect of that contract. There was no question that the parties, by failing to provide for interest in the contract, intended that no interest was to be charged. However, Stevens now asserts that by failing to include an interest provision, his contract with plaintiff is incomplete. Stevens also argues that the receipt fails to set forth the price and terms relating to Bunnell's property, even though the receipt expressly states that such property has an agreed value of $15,000, and that it is to constitute part of the consideration for the Alta. Furthermore, the receipt sets forth the time and the type of instrument to be used for the transfer of Bunnell's property. Stevens' contention that the provision relating to the transfer of Bunnell's property is merely an agreement to agree and that the receipt is therefore not binding, is nothing more than an attempt to evade the obligations of a valid contract. As this court pointed out in Moody v. Smith,[10] a party to a contract cannot seek to alter a portion thereof under the guise of attacking the existence of such portion as a separate contract.

Stevens' further attack upon the contract is to the effect that there was no meeting of the minds as to the personal property that was to be included with the transfer of the Alta and with the transfer of Bunnell's property. As to the personal property to be included with the Alta, the receipt recited "as listed," but when the

8. Radley v. Smith, 6 Utah 2d 314, 313 P. 2d 465.

9. 12 Am.Jur. Contracts, Sec. 24, p. 521.

10. 9 Utah 2d 139, 340 P.2d 83.

receipt was entered as evidence at trial no list was attached. The only evidence of the items of personal property was presented by Bunnell. She testified that she had made a copy of the list that was intended by the parties to be included in the agreement. Because the receipt clearly shows that personal property was to be included in the transfer of the Alta, Bunnell's written copy was admissible to clear up the ambiguity created by the absence of an attached list. When the receipt is read along with Bunnell's copy of the list, the intention of the parties is made clear.

The weakness of Stevens' attack upon the agreement becomes even more apparent when considering his contention that personal property was to be included in the transfer of Bunnell's property. The receipt contains no indication that Bunnell was to transfer personal property, but Stevens now claims the agreement was incomplete because it contained no such provision. On its face the receipt is clear. Stevens was a businessman who was familiar with property transaction. If personal property was to be included, it should have been so stated in the instrument. Stevens' failure to include such a provision in the receipt is not sufficient to relieve him from liability for his breach of the agreement.

11. See Andreasen v. Hanson, 8 Utah 2d 370, 335 P.2d 404; 2 Sutherland, Damages, Sec. 584, p. 2007.

## II.

The measure of damages where the vendor has breached a land sale contract is the market value of the property at the time of the breach less the contract price to the vendee.[11] Defendant contends that the trial court erred in awarding $5,000 damages, on grounds that the evidence fails to establish the market value of the property. Plaintiff claims the trial court properly found the market value to be $180,000, $5,000 more than the contract price of $175,000. Plaintiff argues that the trial court's finding of a $180,000 market value was supported by evidence of the Willardsen purchase for $180,000 from plaintiff's testimony that the New World Motel being built near the Alta would increase the value of the latter, and from the implications of the entire record.

Where a rule of law has been established for the measurement of damages, it must be followed by the finder of fact,[12] and to recover damages plaintiff must prove not only that she has suffered a loss, but must also prove the extent and amount thereof.[13] Furthermore, to warrant a recovery based on the value of the property there must be proof of its value or evidence of such facts as will warrant a finding of value with reasonable certainty.[14]

12. 15 Am.Jur. Damages, Sec. 366, p. 805.
13. 15 Am.Jur. Damages, Sec. 356, p. 795.
14. Id. sec. 362, p. 801.

In the instant case there was expert testimony that the Alta had a market value of $156,475. Two months prior to defendant's breach, this same property was sold under an almost identical contract for a purchase price which would be equivalent to $175,000, had the interest rate been the same as that in the receipt. However, the trial court seems to have found that the sale to Willardsen for $180,000 was sufficient to establish a market value at that figure. In Andreasen v. Hansen [15] this court recognized that although a subsequent sale may be evidence of market value, it is not conclusive. It was also pointed out that there may be factors involved in the sale which would prevent the purchase price from representing the true market value. The Willardsen contract is not sufficiently similar to the contract breached by defendant Stevens to justify using it for determining the market value of the property that was to be sold to plaintiff. Had the terms of both contracts been substantially the same; had the Willardsen contract been a fair representation of the highest price obtainable in the open market; and had the property included in both contracts been identical, then the Willardsen contract would be evidence of the market value of such property.[16] However, the Willardsen contract is neither substantially similar in terms nor does it include the same property that is contained in the Stevens-Bunnell Contract. The latter contract required a down payment of $24,500, with $7,000 to be paid the second year and annual payments of $14,000 thereafter. In contrast, in the Willardsen contract the down payment was $16,500 with annual payments of $12,000 thereafter. Furthermore, in addition to the same real and personal property that was included in plaintiff's contract, Willardsen was also to receive 16 radios, 22 wall mirrors, 29 luggage stands, 24 desk stools and 1 adding machine. The fact that Willardsen was allowed a smaller down payment and smaller annual payments, plus the fact that he was to receive substantially more property under his contract, are factors which would increase the purchase price. These factors also preclude using the purchase price to Willardsen as evidence of the market value.

The other supporting evidence for a $180,000 market value that plaintiff claims to exist, such as plaintiff's opinion that the value of the Alta would increase, and implications from the entire record, does not contain the degree of certainty which a reasonably accurate ascertainment of market value would require. This is especially true where additional evidence was readily available for a more accurate valuation. Damages cannot be found from

15.  Note 11, supra.

16.  55 Am.Jur. Vendor and Purchaser, Sec. 556, pp. 950–51.

mere speculative and conjectural evidence,[17] and therefore the trial court's finding that Stevens' breach damaged plaintiff in the amount of $5,000 cannot be supported by the evidence and cannot be upheld.

### III.

The trial court found that defendants, Coombs and Bills, combined and conspired together with Stevens to cause him to breach the Stevens-Bunnell contract, and that all three defendants were jointly and severally liable to Bunnell for $5,000 plus costs.

It is generally recognized in a majority of jurisdictions that one who persuades another or conspires with another to breach a contract is guilty of an actionable tort, unless such persuasion or other action causing the breach was done with just cause of excuse.[18] It is also generally recognized that even though a defendant's action brings about a breach of contract, he is not liable where the breach was caused by the doing of an act which he had a legal right to do.[19] This rule is applied by Prosser in his Law of Torts, page 737, Sec. 106, as follows:

"If (defendant) has a present, existing economic interest to protect, such as the ownership or condition of property, or a prior contract of his own, or a financial interest in the affairs of the person persuaded, he is privileged to prevent performance of the contract of another which threatens it; and for obvious reasons of policy he is likewise privileged to assert an honest claim or bring a suit in good faith, to exercise the right of petition to public authorities, or to settle his own case out of court."

In the instant case Bills contracted to sell the property in question to Stevens, legal title to remain with Bills until Stevens had paid the full purchase price. The contract provided that if the buyer should default upon any payment the seller could elect to be released from all obligations to convey legal title, and further, that the seller could treat all payments which had been made as liquidated damages for the nonperformance of the contract. Thereafter, Stevens contracted to sell this same property to plaintiff. Stevens' only claim to the Alta Motor Lodge was an equitable right to a conveyance of legal title after he had paid the purchase price. Stevens could convey to plaintiff no greater interest in the property than he himself had at the

---

17. 15 Am.Jur. Damages, Sec. 356, p. 797.
18. Gammon v. Federated Milk Producers Ass'n, 11 Utah 2d 421, 360 P.2d 1018; 15 C.J.S. Conspiracy § 13, p. 1020.
19. Gammon v. Federated Milk Producers Ass'n, note 18, supra.

time the Stevens-Bunnell contract was exe-cuted. Therefore plaintiff's right to a conveyance of legal title was also contingent upon Stevens performing his contract with Bills.

When it became apparent that Stevens would be unable to carry out his obligations under the contract with Bills, the latter's real estate agent, defendant, Coombs, found another buyer for the Alta. Bills and Stevens thereupon released each other from their respective obligations, and the $10,000 down payment was returned to Stevens. For breaching his contract with plaintiff, Stevens should be held liable, but it does not follow that Bills should also be held responsible for the nonperformance of this contract to which he was not a party. Instead of releasing Stevens and returning his down payment, Bills could have waited until Stevens' nonperformance had become an actual rather than prospective breach and at that time rescinded the contract and declared the $10,000 forfeited as damages. Bills' rescission would also relieve him from his promise to convey legal title. Stevens testified at trial that had he not obtained the release, his inability to obtain funds to meet his next payment would cause him to lose the $10,000 he had already paid to Bills. If Bills had declared a breach of contract rather than releasing Stevens, the only difference in result would be that Bills would gain and Stevens lose $10,000. The

effect upon the plaintiff would be the same. It does not seem reasonable to assume that by executing the release, Bills made himself liable for conspiring to cause a breach of the Stevens-Bunnell contract. The policy of the law should be to encourage equitable out-of-court settlements; and to recognize a claim for conspiracy where the forfeiture provision of a contract is not enforced would be a deviation from this policy. It was Stevens' inability to meet his contractual obligations with Bills which caused him to breach his contract with plaintiff. The action by Bills was the result and not the cause of Stevens' inability.

Coombs, a real estate agent and son-in-law of Bills, was also held by the trial court to be liable for conspiring to cause a breach of the Stevens-Bunnell contract. The record clearly indicates that Coombs' negotiations for the Stevens-Bills release and for the subsequent sale to Willardsen were done in behalf of, and as agent for, Bills. Coombs was no more liable for the breach of Bunnell's contract than was his principal, Bills. Where persons have merely pursued their own ends without any desire or intention of causing another to breach his contract, they should not be held liable for the other's breach. To hold them liable for damages so far removed from their action, would amount to an undue restraint upon their freedom to act.[20]

20. Prosser, Torts, Sec. 106, pp. 734–35 (2d ed. 1955).

Stevens was unable to perform his contract with Bills, which in turn prevented him from obtaining the legal title he had contracted to convey to Bunnell. Bills had a legal right to refuse to convey legal title to Stevens. Coombs was acting as Bills' agent for the resale of the Alta to Willardsen. The evidence does not show that they were engaged in a concerted action to cause the breach, nor does it show that such action was in fact done for the group as part of the plan. Therefore, there is no basis upon which Bills and Coombs can be held liable for Stevens' breach.[21]

The trial court's finding that Stevens and Bunnell had entered into a binding contract and that Stevens became liable to Bunnell for damages caused by his breach, should be affirmed. The finding that plaintiff was damaged in the sum of $5,000 should be reversed and remanded so that evidence sufficient to support a determination of market value may be presented. The judgment against Bills and Coombs for conspring to cause a breach of the Stevens-Bunnell contract should be reversed. No costs awarded.

WADE, C. J., and HENRIOD, McDONOUGH and CROCKETT, JJ., concur.

---

21. Teamsters, Chauffeurs & Helpers of America, Local Unions No. 222 and No. 976 v. Board of Review, Dept. of Employ- ment Security, 10 Utah 2d 63, 348 P. 2d 558.