COX CORPORATION, a Utah Corporation, Plaintiff and Respondent,

v.

Jerry DUGGER d/b/a J & D Enterprises, Defendant and Appellant.

No. 15269.

Supreme Court of Utah.

Aug. 2, 1978.

David K. Smith, Salt Lake City, for defendant and appellant.

Byron L. Stubbs, Salt Lake City, for plaintiff and respondent.

ELLETT, Chief Justice:

Cox Corporation sued Jerry Dugger for damages because of a claimed breach of an oral contract to lend $50,000. The case was tried to the court which rendered judgment in favor of Cox for $50,000, the total amount of money promised to be loaned.

Cox Corporation claims that it needed $50,000 to exercise an option to purchase realty and by reason of the failure of Dugger to make the funds available, it lost the opportunity to secure valuable property at a bargain. The damages, if allowable, would be the difference between the reasonable value of the property and the amount of money required to be paid by the option contract. It would not be the $50,000 promised by Dugger.

It appears that Cox Corporation has no basis for recovery in this case. On the 12th day of December, 1970, Paul J. Cox, a single man, entered into an agreement with one McArthur and wife whereby land owned by Paul J. Cox was conveyed to the McArthurs with an option given back to him to repurchase the property for the sum of $44,604 cash within 18 months from date, less pro rata credit for interest for any unused portion of the 18 months.

The plaintiff herein is the Cox Corporation and not Paul J. Cox. It filed its com-

plaint on September 1, 1972, against the defendant because he did not furnish the corporation money with which to exercise the option above mentioned. The option expired 18 months after date, to wit: on June 12, 1972, and thereafter the option was valueless.

On March 2, 1977, Paul J. Cox assigned his long past-due option to the Cox Corporation, the plaintiff herein. By that assignment he gave nothing to the corporation. In the assignment Paul J. Cox and Cox Corporation agreed with each other and assert as a fact that the option was given to Paul J. Cox for and on behalf of Cox Corporation; however, the warranty deed and supporting agreement were signed by Paul J. Cox in his individual capacity and not on behalf of Cox Corporation. The option agreement states that Cox is the owner of the described property, not Cox Corporation as the later assignment purported to claim. Paul J. Cox, the holder of that option, was the only one who could exercise it unless and until it was assigned; but at the time of assignment in 1977, the option had expired and was of no value to the assignee.

Cox Corporation may have been without money, but it is neither claimed nor shown that Paul J. Cox was unable to exercise the option; and for that reason the plaintiff is not entitled to recover anything for any breach of defendant's promise to lend money to Cox Corporation, which corporation had no rights under the option agreement until several years after the option had expired.

The dissent says "the evidence clearly supports the trial court's conclusion that . . . Paul Cox and Cox Corporation were one and the same, . . .". The court never made any such conclusion, and there is no claim made in either the pleadings or in the briefs filed on appeal to that effect.

The judgment is reversed and costs are awarded to the appellant.

CROCKETT and HALL, JJ., concur.

MAUGHAN, Justice (dissenting).

By holding that Cox Corporation has no interest in the option agreement, the majority opinion overlooks undisputed evidence in the record, on which the trial court based its findings. In its findings of fact, the trial court states, " . . . plaintiff had an interest in an option to repurchase property previously owned by plaintiff in Cedar City . . .." The evidence clearly established Cox Corporation had been the equitable owner of property since 1956; as such it carried it as an asset in its books, received all rents generated, and paid all tax liabilities. The corporation was a close family corporation; in fact, Paul Cox testified he and the corporation were virtually the same, in some respects. He functioned as the "property manager" for the corporation, acting under a resolution from the Board of Directors of Cox Corporation to handle all transactions concerning the corporation property. In this capacity Paul Cox entered into the option agreement with McArthur.

Contrary to the statement in the majority opinion, the evidence clearly established neither Paul Cox nor Cox Corporation could exercise the option without the loan from defendant. No evidence indicates Dugger intended to deal only with the corporation; he made no distinction between Cox Corporation and Paul Cox for purposes of the $50,000 loan.

The evidence clearly supports the trial court's conclusion that for purposes of Dugger's liability to Cox Corporation, Paul Cox and Cox Corporation were one and the same, and that Cox Corporation should be able to recover damages.

Plaintiff, Cox Corporation, (hereinafter referred to as Cox) sued defendant Jerry Dugger for damages arising from the breach of an oral contract to loan money. The trial court, sitting without a jury, rendered judgment in favor of Cox for $50,000, and denied relief on Dugger's counterclaim. Dugger appeals, alleging several errors. We should affirm, but modify the award of damages, and award costs to plaintiff. All statutory references are to Utah Code Annotated, 1953.

Recovery of the award and costs should be contingent upon the outcome and final resolution of the issues in the matter of *Willard M. Milne Investment Company v. Paul Cox v. Andrew O. McArthur, et al.,* Third-Party Defendants, Case No. 15190, Utah, 580 P.2d 607 (1978).

In that matter defendant, Paul Cox, appealed a directed verdict in favor of Plaintiff and Third-Party Defendants. The directed verdict determined the land contract for the purchase of Cedar City property to be a conveyance, which became absolute upon Cox's failure to exercise an option to repurchase. At trial, and on appeal Cox contested such verdict, asserting the land contract to be a mortgage. This Court reversed and remanded for further proceedings.

This land contract is the same one plaintiff, in the matter at hand, relies on to establish his damages flowing from Dugger's failure to lend money for the purpose of allowing the exercise of the buy-back option. Thus, in the matter at hand we have plaintiff asserting it lost the land; but in Case No. 15190, cited above, we have Cox asserting he has not lost the land, and has standing as a mortgagor.

We should remand with instructions to withhold any award pending final resolution of Case No. 15190 cited above. In that matter, if Cox is determined to be a mortgagor, plaintiff here cannot recover damages. In the event the land contract is finally resolved to be a conveyance, then damages here would be appropriate.

In April, 1972, the parties entered into an agreement to lease to Dugger certain property in Richfield, Utah. At that time Dugger agreed to loan $50,000 to Cox, in return for a mortgage in favor of Dugger on the same Richfield property. Cox explained to Dugger the purpose of the loan, viz., to exercise an option to purchase land in Cedar City which was to expire on June 12, 1972. The option price was approximately $45,000, leaving Cox $5,000 which he intended to apply to a delinquent debt secured by property in St. George, Utah. The evidence established that Dugger understood the

purpose of the proposed loan, and that Dugger knew that Cox would lose its option to purchase the Cedar City property if the loan were not made by June 12. Dugger stated that he would obtain the funds for the loan from his brother in California, and reassured Cox even past June 12 that the money was coming.

Relying on Dugger's promise to perform, Cox executed a mortgage and a trust deed covering the Richfield property and delivered them to Dugger. These encumbrances were recorded by Dugger on June 16, 1972, in Sevier County. Approximately June 12, when it became apparent to Cox that Dugger would not perform as agreed, Cox attempted to obtain alternate sources of financing, but was unsuccessful. Cox thus was unable to exercise the option to purchase the Cedar City property. In addition, Cox defaulted on its obligation to the St. George Savings and Loan, and lost the St. George property. Cox subsequently filed this lawsuit September 1, 1972.

The trial court found the parties entered into a contract to loan money, that Dugger knew the purpose for the loan and the consequences to Cox of not obtaining the loan by June 12, 1972. The court also found Cox was unable, partially because of Dugger's acts, to obtain funds from other sources. Based on the above findings, the court awarded Cox damages for breach of contract in the amount of $50,000, representing the amount of the promised loan.

Dugger first contends the doctrine of collateral estoppel applies to Cox's complaint in this action, by reason of a judgment rendered in 1977 in an action involving these parties. That action was a foreclosure proceeding on Cox's property in St. George, initiated by Ronald Spratling in 1973, after the inception of the case at hand. Cox then sued Dugger on a third-party complaint, alleging Dugger's refusal to loan money to Cox had caused him to default on the mortgage. The third-party complaint described the trust deed covering the Richfield property, and stated that it was " . . . delivered to Dugger by Cox as consideration for Dugger loaning

the sums as evidenced and indicated by said notes and trust deeds to Cox so that Cox could obtain funds to pay off a mortgage on Cox's Cedar City property. . . ."

The district court dismissed Cox's third-party complaint in November, 1975, and Cox made no appeal. Dugger asserts here that the dismissal was involuntary, and, under Rule 41, operated as an adjudication on the merits. The allegations of the third-party complaint are therefore deemed controverted, and operate to bar relitigation of the same issue in the case at bar, says Dugger.

The trial court was correct in holding the doctrine of collateral estoppel did not apply to Cox's complaint. Generally, the doctrine of res judicata bars relitigation of identical issues previously raised, and also issues which could have been adjudicated; in a subsequent action, between the same parties.[1] However, it applies to this extent only if the claim, demand or cause of action in the two cases is the same.[2]

Collateral estoppel is a branch of res judicata, which bars the relitigation of a particular issue or determinative fact between the same parties where the claim is not the same, or where the parties are not the same in the two actions. It applies only to issues actually litigated, not to those which might have been determined.[3]

In the Spratling action, Cox alleged three claims against Dugger: fraud, slander of title, and damages for nonpayment of rent. Since the claim in Cox's complaint against Dugger in the case at bar is for breach of a contract to loan money, res judicata is not applicable. Dugger asserts, even so, collateral estoppel bars this action because the same determinative issue, viz., whether a contract to lend money existed between Cox and Dugger, was found in Dugger's favor by the dismissal of the third-party complaint.

Referring to when collateral estoppel applies, this court stated in *In re Town of West Jordan:* [4]

That doctrine only applies where a question of fact *essential to and determinative of* the judgment is actually litigated and determined by a valid or final judgment which is conclusive as between the parties to a subsequent action on a different cause of action. [Emphasis added.]

We are of the opinion the issue of whether a valid, enforceable contract existed between Cox and Dugger was not an issue "essential to and determinative of" the judgment in the Spratling case, since the relevant claims in the third-party complaint were for fraud and slander of title. The evidence required to prove these torts is quite different from evidence required to prove the existence of a valid contract. Thus, even though the third-party complaint mentioned the trust deed was given to Dugger in consideration for a loan, its dismissal does not mean that statement was proved in the negative.

There is another reason why collateral estoppel is inapplicable here. This action, originally filed by a different attorney, was pending at the time the Spratling action began in 1973. While it is true the judgment in the Spratling action predated the trial in this action, the reasons for involving the doctrine here are nevertheless not compelling. The wisdom in the doctrine of collateral estoppel is that it gives finality to judgments, and also conserves the time of courts. The circumstances here do not upset those desirable goals, for this is not a case in which plaintiff attempts to retry issues which had previously been fully litigated.

Dugger next argues the court had no subject matter jurisdiction, and even if it had jurisdiction, the proper procedure for changing venue was not followed. Dugger

1. *Richards v. Hodson,* 26 Utah 2d 113, 485 P.2d 1044 (1971); *Wheadon v. Pearson,* 14 Utah 2d 45, 376 P.2d 946 (1962).

2. *Wheadon v. Pearson,* supra note 1.

3. *Richards v. Hodson,* supra note 1; *Roper v. Mabry,* 15 Wash.App. 819, 551 P.2d 1381 (1976).

4. 7 Utah 2d 391, 326 P.2d 105 (1958).

contends the action was actually one for recovery of real property, which according to section 78–13–1, must be tried in the county in which the property is located. We agree with the trial court that the complaint stated a claim for breach of contract; the district court therefore had subject matter jurisdiction according to its constitutional authority.[5]

Regarding Dugger's claim that the proper statutory procedure was not followed in changing the venue to the Salt Lake County District Court, it is clear Dugger acquiesced in the change of venue, and the action was therefore properly tried in Salt Lake County.[6]

Dugger asserts the trial court's award of damages was excessive. We agree, and hold the trial court did not use the proper measure of damages in making its award.

The normal measure of damages for breach of a contract to loan money is the difference, if any, between the interest rate contemplated in the contract, between the parties, and the rate the borrower obtained in the alternate loan; plus the expense of obtaining the second loan.[7] But where the borrower is unable to obtain money elsewhere, and the defendant knew of the particular purpose for which the money was needed, special damages may be recovered, provided they are not speculative or remote.[8] This is merely an application of the general rule laid down in *Hadley v. Baxendale*,[9] viz., damages recoverable for breach of contract are such as may reasonably supposed to have been in the contemplation of the parties, as the probable result of its breach, at the time they contracted.

The record in this case contains sufficient evidence to show Dugger contracted to loan Cox $50,000, for the purpose of enabling Cox to exercise an option to purchase land which Dugger knew was to expire June 12, 1972. Dugger understood that Cox was relying on Dugger's performance, and that Cox would likely be unable to obtain financing elsewhere in time to exercise the option. Thus, the parties understood the probable result of Dugger's nonperformance would be that Cox would lose his opportunity to purchase the Cedar City property.

The trial court awarded damages in the amount of $50,000, which was "the amount promised to be loaned." In this we believe the court erred. Cox is entitled to be put in the position, as well as possible, in which he would have been had Dugger performed the agreement.[10] Had Dugger performed, Cox would have purchased the Cedar City property for $44,604. At trial, Cox's expert witness determined the 1972 market value of that property to be $83,300. Therefore, Cox would have obtained a benefit from the bargain amounting to the difference between the market value and the purchase price, or, $38,696. This is the same measure of damages applicable to the breach of a contract to convey land,[11] and is the proper measure in this case, where Cox has been prevented from purchasing property because of Dugger's breach.

Regarding the $5,000 which was to apply to a delinquent debt secured by Cox's St. George property, the same measure of damages cannot apply. The record indicates that had Dugger actually loaned Cox $5,000 to pay the delinquent account at the St. George Savings and Loan, Cox may well have lost the St. George property anyway, because the debt owed was over $10,000. No special damages may be awarded on this point, since it was not established the parties understood the consequences of Dugger's failure to loan the $5,000.

5. Utah Const. Art. VIII, Sec. 7, states: "The district court shall have original jurisdiction in all matters, civil and criminal, . . . ."

6. § 78–13–8.

7. II Williston on Contracts, 3rd Ed. § 1411.

8. Id., § 1411 at p. 614; *Pecos Construction Co., Inc. v. Mortgage Investment Co. of El Paso,* 80 N.M. 680, 459 P.2d 842 (N.M.1969); 22 Am. Jur.2d, Damages §§ 68, 69.

9. 9 Exch. 341, 146 Eng. Reprint 145 (1854).

10. *Bell v. McCann,* 535 P.2d 233 (Colo.App. 1975).

11. *Bunnell v. Bills,* 13 Utah 2d 83, 368 P.2d 597 (1962).

WILKINS, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.