Robert HOPKINS, Plaintiff
and Respondent,

v.

WARDLEY CORPORATION, a Utah
Corporation, Defendant and
Appellant.

No. 16500.

Supreme Court of Utah.

May 1, 1980.

Joseph H. Bottum and Bruce R. Baird, Ogden, for defendant and appellant.

Alan D. Frandsen, Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Plaintiff is the owner of certain real property located in Ogden, Utah, which he listed for sale with defendant, a real estate brokerage. Under circumstances more fully described *infra*, defendant accepted a $5,000 check as earnest money on behalf of plaintiff from a prospective buyer, which was returned by the bank marked "refer to maker". Plaintiff brought action alleging misrepresentation on the part of defendant.

From judgment entered in favor of plaintiff in the amount of $5,000 by the District Court, Weber County, sitting without a jury, defendant appeals. Affirmed; costs to plaintiff.

Plaintiff's real property was listed for sale at $275,000 and included a building in which were located two rented apartments and a dining and lounge area, the latter of which was rented by a private liquor club. A sales agent, Glenna Watkins, employed by defendant, found a buyer who was interested in the property. On May 26, 1978, the sales agent prepared a standard form "Earnest Money Receipt and Offer to Purchase," which recited therein that earnest money of $1,000 in the form of a promissory note, "to be converted to cash by June 1," had been received by the agent. The offer was subject to buyer's inspection and approval, on or before June 8, 1978, of plaintiff's records of the businesses conducted on the property. The closing date for payment of the down payment of $67,750 and execution of the final contract were set for June 20, 1978. By signing the earnest money agreement, the buyer agreed that the deposited earnest money would be forfeited to seller as liquidated damages, if the buyer breached the agreement.

This offer was accepted by plaintiff conditioned upon the buyer's deposit of an additional $4,000 upon approval of the business records on June 8, which condition was duly accepted by the buyer.

On June 7, 1978, plaintiff allowed the buyer to examine the books of the private club. The next day, another of defendant's agents, Kelly Bambrough, told plaintiff that the business records had been approved by the buyer, but the buyer wanted plaintiff to deliver possession a week early so that he could start some remodeling. Plaintiff asked if the "money was up." Bambrough said it was. Plaintiff prepared to close the lounge and move out his personal property by June 13, which was set as a new closing date. He invited the members of the private club to a party at his expense on June 13.

On June 13, Glenna Watkins telephoned plaintiff and said that the buyer was out of town and could not close that day, but would close on the 15th instead. She asked plaintiff to sign the papers, and she would have the buyer close two days later. Plaintiff asked her if she was sure the "money was up". She said it was. Plaintiff signed the final papers, and that night, after the party for the members of the private club, closed the lounge. The buyer failed to close the sale on the 15th. On the 16th of June, a $5,000 check [1] deposited as earnest money was returned by the bank, and plaintiff was advised of that fact. The lounge remained closed, however, until June 20, the original date for closing the sale, as defendant told plaintiff that the buyer would not be in breach of the agreement until after that date.

At the trial, Glenna Watkins testified that the buyer was engaged to marry Jane Naylor, a secretary employed by defendant,

---

1. This check represented both the $1,000 promissory note, and the $4,000 earnest money which was to be deposited on June 8.

and that he was buying the property for undisclosed investors. The buyer had approved plaintiff's business books on June 8, and at that time had given Mrs. Watkins a $5,000 check payable to defendant, noted *ante*, drawn on the account of Jane Naylor, as he said, he had no checking account of his own. Glenna Watkins testified that she was not disturbed by this arrangement and told plaintiff that the money had been received, but did not disclose that the check was drawn on the secretary's account, nor that she had not verified that funds had been deposited to cover the check.

At the trial, plaintiff introduced evidence that income of the private club decreased because of the week's closure, and did not recover for several months afterward. This evidence was admitted over defendant's objection on the ground of irrelevancy.

The District Court found that plaintiff acted to his own detriment, and was damaged, in reliance on the representation that defendant held $5,000 for him, which would be liquidated damages if the sale did not go through; that defendant knew that plaintiff was relying on the $5,000, but did not disclose to him that the check it held was not entitled to "full faith and credit;" that defendant deliberately misled plaintiff to act to his own detriment; that defendant was thereby estopped to deny that it did not have the earnest money on deposit; and defendant was liable to plaintiff in that amount.

■ On appeal, defendant contends that the Court erred in granting judgment to plaintiff in the amount of the earnest money. It is defendant's position that plaintiff is not entitled to recovery of the earnest money, but is entitled only to *his* actual damages (not the private club's) and that plaintiff failed to prove he was damaged at all. Defendant argues that the only evidence of damage produced at trial was the evidence of the private club's lost profits;

that no evidence was introduced to show any legal relationship between plaintiff and the private liquor club which was renting his property, other than that of landlord and tenant, and that it is anomalous for plaintiff to claim that he is personally entitled to recover lost profits incurred by an organization which is required by the laws of this State to be a non-profit corporation.[2] While defendant is correct in its observation, and we agree that the evidence of the club's lost profits was irrelevant in this case since the plaintiff did not show that his collection of rents from the club was in any way related to the club's loss, we do not agree that plaintiff failed to prove *his* damages here.

■ Defendant, as plaintiff's agent, owed to plaintiff a fiduciary duty of full disclosure of facts material to its principal's business.[3] The record is clear that this duty was breached by defendant. Knowing that plaintiff relied on the receipt of the earnest money, defendant repeatedly assured him that the money was received, and failed to disclose to him facts within defendant's knowledge which would reveal the highly unreliable nature of the check received. Relying on the representation that the money was received and would be forfeited to him if the buyer failed to close the sale, plaintiff changed his position to his detriment. Hence, plaintiff is entitled to recover for damages from defendant's breach of its duty of full disclosure.[4]

This Court, to our knowledge, has not heretofore been presented with the question of what the measure of damages is in an action for damages resulting from the breach of a real estate broker's fiduciary duty to its principal, the seller of real property. The question has been considered by some other jurisdictions. In *Witt v. Blomquist*, 249 Minn. 32, 81 N.W.2d 265 (1957), the Minnesota Court recognized liability on the part of the agent, but denied recovery of the earnest money to plaintiff as he had

---

**2.** See § 16–6–13, et seq., Utah Code Ann., 1953, as amended.

**3.** *Reese v. Harper*, 8 Utah 2d 119, 329 P.2d 410 (1950).

**4.** Id. See also Restatement of Agency, Second, § 401.

not proved that he was damaged by the agent's breach in any respect. The Arizona Appellate Court held that the sellers had proved damage as they had turned down subsequent offers for the property, in reliance on the agent's assurance of the receipt of earnest money, in *Roy H. Long Realty Company, Inc. v. Vanderkolk*, 26 Ariz.App. 226, 547 P.2d 497 (1976). The Court held in *Vanderkolk* that plaintiff was entitled to the amount of the earnest money as his damages. And in *Merkley v. MacPherson's, Inc.*, 69 Wash.2d 776, 420 P.2d 205 (1966), the Washington Court held that the measure of liability on the part of an agent who negligently fails to collect claims or debts for his principal is, prima facie, the amount of the debt or claim; to wit, the earnest money which the agent had represented that it had received, and on which the seller relied. In the *Merkley* case, the Court further held that once the principal proves that his agent misrepresented to him that earnest money was received, when in fact it was not, the burden is on the agent to show that the damage to the principal was less than that amount.

We believe the better reasoning is found in the *Merkley* case, and hold that here, the plaintiff has proved, prima facie, that he was damaged in the amount of the $5,000 earnest money on which he relied, and he changed his position to his detriment by moving his personal belongings from the real property, and, further, undertook the expense of a farewell party for the members of the private club.

Defendant failed to prove at the trial that plaintiff would have been entitled to anything less than the $5,000 or would not have recovered against the buyer on that contract.

Finally, defendant argues that there is insufficient evidence to support the Court's findings, that defendant misrepresented facts to plaintiff. This argument is without merit. There is substantial, credible evidence in the record to support the Court's findings, and we therefore do not,

and cannot, reverse the District Court's findings of fact.[5]

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.

---

5. *Town & Country Disposal, Inc. v. Martin*, Utah, 563 P.2d 195 (1977).