335 P.2d 67

William F. SMITH and Patsy Smith, his
wife, Plaintiffs and Respondents,

v.

CARROLL REALTY COMPANY, a corpora-
tion, and Nathaniel A. Smith, Defend-
ants and Appellants.

No. 8892.

Supreme Court of Utah.

Feb. 9, 1959.

Richards & Bird, Salt Lake City, for appellants.

Rawlings, Wallace, Roberts & Black, Wayne L. Black, Richard C. Dibblee, Salt Lake City, for respondents.

WORTHEN, Justice.

Appeal from a special verdict of a jury awarding to plaintiffs damages in the sum of $4,850 in connection with an exchange of property of plaintiffs in Salt Lake City, Utah, for property in Lava Hot Springs, Idaho.

Plaintiffs listed their Salt Lake City home with Carroll Realty Company. They selected that company because their friend, defendant Nathaniel A. Smith, was a real estate agent for Carroll Realty Company.

In the autumn of 1950, defendant Smith showed plaintiff a photograph of a home belonging to Nick Kladis, which he desired to exchange for Salt Lake City property. It was agreed that they should go to Lava Hot Springs and look over the property, which the owner valued at $15,500. Plaintiff, William Smith, and defendant, Nathaniel A. Smith, made the trip to examine the Lava Hot Springs property. They spent about two to three hours looking over the property and returned to Salt Lake City the same evening.

On the return trip the defendant stated that he was not familiar with the market value of properties in the Lava Hot Springs area—but he agreed to investigate and determine the value of the Kladis property. The day following the return from Lava Hot Springs, defendant Smith telephoned to an L.D.S. bishop in Lava Hot Springs. Smith advised the operator that he wanted to talk with the ward bishop in Lava. He didn't know the name of the bishop but was connected with a Mr. Teeples who operated a cleaning establishment. Defendant Smith made no contact with anyone except Mr. Teeples. Before the exchange agreement was executed plaintiff asked defendant Smith what he had found out about the property in Idaho, and the defendant advised plaintiff that it looked like a good deal; that he had made investigation and from all he could learn it looked like it would be a reasonable price to allow for the property at Lava.

The record discloses that Mr. Teeples owned no real estate in Lava Hot Springs and had never owned any; that he had never been engaged in buying or selling real estate. Mr. Teeples testified that he had been in the home twice; that he had never inspected the property; that Nathaniel Smith asked him what he figured the property was worth and "I told him I didn't know, I wasn't in that kind of business, I wouldn't know what it would be worth." Mr. Teeples testified "And then

when he quoted the price $15,500.00 I told him it sounded high to me and then he asked why, and then I told him that the building was apparently very poorly built and no heating plant. * * *"

Defendant failed to advise plaintiff of the quoted statements made by Mr. Teeples. He did not tell plaintiff that Mr. Teeples had said he thought the price was too high and that it was poorly built and had no heating plant.

After defendant Smith advised plaintiff that it looked to him like $15,500 would be a "reasonable price to allow for that property at Lava," the plaintiff said, "Nate, you know I rely on you—on your judgment—and if you say it is okay, it is okay by me."

In February, 1951, warranty deeds and mortgages were executed by the parties and each party took possession of his home. Six months later plaintiff listed the Idaho property for sale but was unable to find a buyer and the mortgage given Kladis on the Idaho house was foreclosed and the home sold at sheriff's sale.

In February, 1954, plaintiff went to Lava Hot Springs to investigate the transaction. He contracted residents of the community, including Mr. Teeples, and on completion of his investigation filed suit. Plaintiffs charged defendants with failure to exercise reasonable and customary skill and diligence in their profession. Plaintiffs also asked for

refund of the real estate commission paid defendants for selling their home in Salt Lake City.

A real estate agent from Pocatello, who was familiar with the market values of property in Lava Hot Springs, testified that the reasonable value of the Kladis property as of February 1, 1951, was between $7,000 and $8,000. The trial court instructed the jury that the measure of damages was the difference between the fair market value of plaintiffs' equity in their Utah home and the fair market value of the Idaho property.

The jury returned a special verdict for $3,700 as the amount of the difference.

The jury also awarded plaintiffs $1,150, the amount of the real estate commission for selling plaintiffs' home under the court's direction. The court entered judgment for plaintiffs for the amount found by the jury.

Defendant assigns numerous errors which may be grouped under the following heads:

(1) Defendants were not negligent in failing to ascertain the reasonable value of the property in Lava Hot Springs; and did not fail to discharge their duty as real estate agents with ordinary care and diligence.

(2) Refusing an instruction on contributory negligence or assumption of risk.

(3) In directing a verdict for the amount of the real estate commission paid defendants for sale of plaintiffs' home.

(4) Denying appellants' motion for new trial.

As to the first assignment of error, there is an abundance of evidence that the defendants had a duty to determine the reasonable value of the property in Idaho. Without ascertaining the reasonable market value of the property defendants would have no gauge with which to consider what trade and what terms should be made. Defendant certainly was called on to put himself in an advantagous position to represent his client. Defendant Smith testified that he knew nothing about property in Lava Hot Springs, had no knowledge of market value of property there and that he so advised the plaintiff Smith. But he told plaintiff that he would ascertain the value of the Idaho property. It is strange that defendant made no inquiry when he and plaintiff Smith went to look at the property, unless he didn't want to make any investigation with plaintiff present. He testified that he was in Lava Hot Springs for three or four hours, yet he didn't even talk to a neighbor or a businessman. The next day when he talked with Mr. Teeples he knew that his client would be getting a raw deal. He knew the price was too high and that the house was poorly constructed and was without heat. Yet defendant Smith kept from plaintiff facts which he had a duty to disclose and represented that it was a fine deal and that the property in Idaho was worth what they

were asking. If defendant had merely neglected to ascertain the reasonable market value of the Kladis property his conduct would not be justified, but to obtain the information and to withhold the same was reprehensible, particularly so when the withholding of the information probably was the cause of plaintiffs' loss. It is most unlikely that plaintiffs would have executed the exchange agreement had they been given the information which defendant obtained for plaintiffs but failed to disclose.

The trial court submitted to the jury the question as to whether or not the defendant Smith was obligated under the scope of the employment agreement to determine and report the reasonable value of the Kladis property. The jury answered that defendant was so obligated. The jury further found that defendant Smith breached his agreement by failing to use reasonable skill and diligence in determining and reporting the value. The jury also found that such breach was a proximate cause of plaintiffs' entering into the exchange agreement.

This court in the case of Reich v. Christopulos [1] said:

"In undertaking the sale of the property for the Reiches, Hill had a duty to represent their interest in good faith, to discharge it with reasonable skill and diligence and to disclose to them all pertinent facts which would materially affect their interest."

■ Nor do we see any merit to defendants' second assignment of error. Unless there was evidence which would support a finding that plaintiffs were contributorily negligent in the matter or that they assumed the risk of entering into the exchange agreement without reliance on the report given by defendants, there was no occasion for giving an instruction on either.

■ In our opinion plaintiffs were not required to make an independent investigation of the value of the Idaho property. Defendants having undertaken to determine and report the reasonable value of the Kladis property justified plaintiffs in relying on defendants. Nor were plaintiffs required to question defendant Smith's report when he said, "It looked like a good deal; looks like the property is worth it." The report given plaintiffs by defendant Smith was such as to cause plaintiff to say, "Nate, you know I rely on you—on your judgment —and if you say it is okay, it is okay by me."

■ As to the third assignment, we are of the opinion that the trial court properly directed the jury to include as damages the commission paid for the sale of their home if the jury found that defend-

1. 123 Utah 137, 256 P.2d 238, 240.

ants breached their employment agreement by failing to use reasonable skill and diligence in determining and reporting the value of the Kladis property.

We know of no rule which would hold defendants liable for damages in the deal and at the same time entitle them to compensation for their breach of duty.

In the case of Reich v. Christopulos, supra, this court quoted from American Jurisprudence as follows:

"The faithful discharge of his duties is a condition precedent to any recovery upon the part of a broker for the services he has rendered his principal. Thus, he is not entitled to compensation if he fails to disclose to his principal any personal knowledge which he possesses relative to matters which are or may be material to his employer's interests. * * *"

Nor do we believe that the trial court erred in refusing to grant a new trial. The newly discovered evidence was certain letters and counteroffers in the custody of Fletcher-Lucas Investment Company. Defendants contended that the documents would have an effect upon the result in a retrial because they would tend to substantiate the testimony of defendants and to impeach the testimony of plaintiffs. The plaintiffs contended that the proposed documents are not newly discovered evidence and that they are merely cumulative and not persuasive.

Plaintiffs contend that the so-called newly discovered evidence was not in fact newly discovered; that defendants had known of their existence all the time. That immediately after the trial they made a further search which was fruitful. The showing made is not persuasive of the fact that defendants had used the due diligence required to satisfy the granting of a new trial.

Defendants failed to request a continuance to enable them to make a proper search which would have been consistent with their knowledge of the existence of the documents.

We are likewise of the opinion that the trial court was justified in his belief that the newly discovered evidence did not satisfy the conditions mentioned in Trimble v. Union Pacific Stages[2] and particularly the fourth condition mentioned in the language quoted from Klopenstine v. Hays,[3] to-wit:

"(4) It must be material to the issues, and so important as to satisfy the court, by reasonable inference, that the verdict or judgment would have been different had the newly-discovered

2. 105 Utah 457, 142 P.2d 674.

3. 20 Utah 45, 57 P. 712, 714.

evidence been introduced at the former trial."

Judgment affirmed. Costs to respondents.

CROCKETT, C. J., and WADE, HENRIOD and McDONOUGH, JJ., concur.