[No. 1376–3.    Division Three.    May 25, 1976.]

MARGARET E. MEERDINK, ET AL, *Respondents*, v. JOSEPH P. KRIEGER, ET AL, *Appellants*.

*Elwood Hutcheson,* for appellants.

*Warren L. Dewar, Jr.,* and *Velikanje, Moore & Shore,* for respondents.

GREEN, J.—Plaintiffs, purchasers, brought an action against defendant realtors, alleging nondisclosure of a dual agency relationship. Defendants appeal from a verdict in favor of plaintiffs.

Errors are assigned to (1) the sufficiency of the evidence; (2) certain instructions given and refused; and (3) alleged jury misconduct. We affirm.

First, defendants contend that the court erred in refusing to dismiss and refusing to grant a judgment n.o.v. for insufficiency of the evidence. It is defendants' position the evidence shows that no dual agency existed; plaintiffs knew defendants were agents for Robert Johnson, the builder; plaintiffs' conduct in completing the transaction constituted implied consent to the alleged dual agency; and defendants made full disclosure to plaintiffs of all material facts. We disagree.

In considering a challenge to the sufficiency of the evidence, it has often been stated:

> The rules applicable for reviewing an order, directing a verdict in favor of a party and thereby removing the issue from the trier of fact, have been firmly established: (1) the evidence must be considered in a light most favorable to the nonmoving party; (2) there is no element of discretion involved; and (3) the motion shall be granted in only those instances where it can be held as a matter of law that there is no competent evidence, nor reasonable inferences arising therefrom, which would sustain a jury verdict in favor of the nonmoving party.

*Shelby v. Keck*, 85 Wn.2d 911, 913, 541 P.2d 365 (1975); *Browning v. Ward*, 70 Wn.2d 45, 422 P.2d 12 (1966); *Rhoades v. DeRosier*, 14 Wn. App. 946, 546 P.2d 930 (1976).

Applying these rules to the evidence in this case, the jury could have found that plaintiffs, widowed sisters contemplating retirement, desired to exchange their homes for an apartment house in which they could live and receive rental income. They contacted defendant Glen Bunger, a real estate agent, seeking his advice and expertise to help them find an apartment house in the $80,000 to $90,000 range. Plaintiffs, unknowledgeable in real estate and business

transactions, told Mr. Bunger they were depending solely upon him for advice. Unable to find a suitable apartment house, Mr. Bunger suggested that plaintiffs build one. He stated they could expect to receive a total net credit of $46,000 for their homes on a trade with a builder. Mr. Bunger and his employer, Mr. Krieger, d/b/a Krieger & Associates, introduced Mr. Johnson, a builder, to plaintiffs who stated their desired $80,000 to $90,000 price range. Mr. Johnson obtained plans which were viewed by plaintiffs who were then presented with an offer to purchase, prepared in Mr. Krieger's office and citing a purchase price of $120,000. Upon inquiry, plaintiffs were told that this figure had to be high to cover unforeseeable problems and, if possible, it would be adjusted downward to allow a small profit over costs. Plaintiffs were reluctant, but a few days later, signed the offer to purchase, relying on Mr. Bunger's statements that the transaction was a "good deal" and that they should pay more so that they could "get more money out of it." This offer was later accepted by Mr. Johnson with the following additional term:

> I agree with the above sale and the foregoing terms and conditions and agree to pay Krieger & Associates, as agent, a fee of $10,000 for services.

Upon receipt of a copy of the accepted offer, plaintiffs did not notice the additional recitation. Thereafter, they attached no legal significance to it but thought, throughout the transaction, that they were obligated to pay a commission.

During construction, plaintiffs continued to express to Mr. Bunger their dissatisfaction with the price and their reservations about going through with the transaction, but he advised them that they could not lose and urged them not to back out. At the suggestion of Mr. Bunger, plaintiffs put their residences on the market through a listing agreement with him, reciting selling prices of $35,000 for Mrs. Meerdink's home and $15,000 for Mrs. Cranfill's home. No results were obtained and plaintiffs ultimately conveyed their properties to Mr. Johnson, receiving a total net credit

of $33,000 for both homes. Upon completion of construction, plaintiffs executed a real estate contract for a purchase price of $115,000. Thereafter, Mr. Bunger and Krieger & Associates held an open house to obtain tenants for the apartment units.

Plaintiffs testified that they thought Krieger & Associates and Mr. Bunger were working for them; that it was never discussed how they were to pay defendants for services; that they did not know the builder was paying a commission; and that they would not have gone through with the deal had they known the defendants were not working for them. Mr. Johnson, the builder, testified that he knew plaintiffs were relying on Mr. Bunger and depending upon him for advice. It was further apparent to Mr. Johnson that plaintiffs had very little knowledge of realty transactions and he questioned Mr. Bunger as to whether plaintiffs should be getting into the deal. Mr. Johnson stated that the price was reduced by $5,000 out of kindness and a desire to be fair to the plaintiff "neophytes." He testified the actual cost of the apartment house was around $80,000 and his usual profit was 15 percent. Both parties produced expert testimony regarding the value of the apartment house, ranging from $87,500 to $115,000.

Thus, the evidence is sufficient to create a question for the jury as to whether defendants were acting as dual agents without the full knowledge and consent of plaintiffs. We recognize that much of the evidence is controverted. However, where the evidence is conflicting, the existence or nonexistence of an agency relationship is a question for the trier of fact. *Murray v. Corson Corp.*, 55 Wn.2d 733, 736, 350 P.2d 468 (1960).

Second, error is assigned to the giving of instruction No. 8[1] and the refusal to give proposed instructions Nos. 4, 6, 9,

---

[1]"If a real estate broker acts as agent for both seller and the buyer, his agency duties extend to both of his principals. This dual agency, while permissible, imposes duties upon the agent which include the following:

"A. To make a clear, express and timely disclosure of the dual

10, 11, and 12, all relating to the legal obligations of an agent to his principal or principals.

■ We begin with the fundamental rule that a real estate agent has the duty to exercise the utmost good faith and fidelity toward his principal in all matters falling within the scope of his employment. Such agent must exercise reasonable care, skill, and judgment in securing the best bargain possible, and must scrupulously avoid representing interests antagonistic to that of the principal without the explicit and fully informed consent of the principal. Further, the agent must make a full, fair, and timely disclosure to the principal of all facts within the agent's knowledge which are, or may be, material to the transaction and which might affect the principal's rights and interests or influence his actions. *Mersky v. Multiple Listing Bureau of Olympia, Inc.*, 73 Wn.2d 225, 437 P.2d 897 (1968). Consequently, a dual agency relationship is permissible "when both parties have full knowledge of the facts and consent thereto." *Brandt v. Koepnick*, 2 Wn. App. 671, 674, 469 P.2d 189 (1970). Before such consent can be held to exist, clear and express disclosure of the dual agency relation and the material circumstances that may influence the consent to the dual agency must be made. *Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc.*, 82 Wn.2d 714, 718, 513 P.2d 282 (1973); *Koller v. Belote*, 12 Wn. App. 194, 528 P.2d 1000 (1974).

Whether defendants violated these obligations raises questions of fact for the jury under proper instructions. Instruction No. 8 conforms with the legal principles set out above and we find no error in the giving of that instruction. Therefore, it was not error to refuse to give defendants'

agency relationship to both principals with consent thereto by both principals.

"B. To exercise the same utmost good faith and loyalty to both principals.

"C. To make a full, fair and timely disclosure to the principals of all facts within the knowledge or coming to the attention of the real estate agent which are, or may be, material in connection with the scope of the agency, and which are likely to affect either of the principals' rights, interests or actions."

proposed instructions which do not completely embrace these principles.

Defendants also assign error to the giving of instruction No. 10,[2] contending that the only proper measure of damages is refund or forfeiture of the commission paid. We disagree.

An agent is subject to liability for any loss to the principal arising from breach of duty. *See* 2 Restatement (Second) of Agency § 401 (1958). Breach of duty by an agent may result in forfeiture of the agent's commission as well as liability for damages. *Koller v. Belote, supra; see Smith v. Carroll Realty Co.*, 8 Utah 2d 356, 335 P.2d 67 (1959).

Third, defendants submit that a new trial should have been granted due to jury misconduct alleging that the facts contained in the foreman's affidavit constitute "evidence not presented by the parties at the trial, which the defendants had no opportunity to rebut and the relevance of which they had no chance to argue." *Halverson v. Anderson*, 82 Wn.2d 746, 748, 513 P.2d 827 (1973).

The affidavit of the jury foreman reads, in part:

> We computed the reasonable cost of construction of the Folsom Avenue Apartments plus 10% to 15% reasonable profit of Johnson, based on the square foot floor area of the building, namely approximately 6300 square feet. The jury did not add to it but disallowed the $10,000 or any other amount for real estate commission paid to the defendants or other selling costs. *This determination was based largely on my personal knowledge of construction*

---

[2] "If you find for the plaintiffs, your verdict should include the difference, if any, between the true and fair market value of the apartment house property as of September 1, 1971, and the contract price. Your verdict should also include the difference, if any, between the true and fair market value of the plaintiffs' residences as of September 1, 1971, and the amount of money given as a credit for the trade-in of their homes.

"The burden of proving damages rests with the plaintiffs and it is for you to determine whether any particular element has been proved by a fair preponderance of the evidence.

"Your award must be based upon evidence and not upon speculation, guess or conjecture."

*costs per square foot.* In this manner we concluded that the value of the apartment house property was approximately $96,000. Deducting this from the $115,000 purchase price showed damages in the sum of approximately $19,000.

(Italics ours.)

■ The granting of a new trial for jury misconduct is a matter within the discretion of the trial court and unless there has been an abuse of discretion or palpable error, the decision of the trial court will not be disturbed. *Kellerher v. Porter*, 29 Wn.2d 650, 663-64, 189 P.2d 223 (1948). The rules governing motions for new trial based on jury misconduct are well settled:

> In considering the affidavits filed, we entirely discard those portions which may tend to impeach the verdict of the jurors, and consider only those facts stated in relation to misconduct of the juror, and which in no way inhere in the verdict itself. It is not for the juror to say what effect the remarks may have had upon his verdict, but he may state facts, and from them *the court will determine what was the probable effect upon the verdict. It is for the court to say whether the remarks made by the juror in this case probably had a prejudicial effect upon the minds of the other jurors.*

(Italics ours.) *State v. Parker*, 25 Wash. 405, 415, 65 P. 776 (1901).

The amount of damages ultimately found by the jury was well within the testimony presented at trial. There is no indication in the affidavit that the jury did not consider the experts' valuation testimony. Implicit in the trial court's denial of the motion for new trial is the conclusion that the information contained in the affidavit had no prejudicial effect upon the verdict. We find no abuse of discretion.

Further, defendants contend that the verdict was excessive and based upon passion and prejudice. We disagree, as the award of damages was well within the evidence presented.

■ Finally, error is assigned to the allowance of a trial

amendment to plaintiffs' complaint. This error is not supported by authority. Assignments of error unsupported by citation of authority will not be considered on appeal unless well taken on their face. *Brown v. Quick Mix Co.*, 75 Wn.2d 833, 454 P.2d 205 (1969); *Northern State Constr. Co. v. Robbins*, 76 Wn.2d 357, 457 P.2d 187 (1969). Moreover, CR 15(a) states:

> A party may amend his pleading once . . . Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

We find no abuse of discretion.

Affirmed.

McINTURFF, C.J., and MUNSON, J., concur.

Petition for rehearing denied June 29, 1976.

Review denied by Supreme Court November 12, 1976.