676 P.2d 52

Charles A. PERKINS, dba Chuck Perkins Realty, Plaintiff/Counterdefendant-Respondent,

v.

Betty THORPE, Defendant/Counterclaimant-Appellant.

No. 13953.

Court of Appeals of Idaho.

Jan. 31, 1984.

Mark D. Stubbs, May, May, Sudweeks, Shindurling & Stubbs, Twin Falls, for defendant/counterclaimant-appellant.

James T. Jones and James C. Meservy, Fuller & Meservy, Jerome, for plaintiff/counterdefendant-respondent.

BURNETT, Judge.

In this case we review a summary judgment entered against a claim that a real estate broker breached his fiduciary duty to a client. The litigation began as an action by the broker, Charles Perkins, against the client, Betty Thorpe, to collect a commission for selling her farm. Thorpe counterclaimed, alleging that Perkins—through one of his salesmen—had breached a fiduciary duty by negligently misadvising Thorpe on the value of her property and by failing to inform her that the brokerage also was representing the buyers of her property in a separate but related transaction. The district court entered summary judgment in favor of the broker on his complaint, dismissing Thorpe's counterclaim. Thorpe has appealed. We vacate the summary judgment and remand the cause.

Thorpe challenges the summary judgment on a procedural ground that it granted relief beyond that sought in the broker's motion, and upon the substantive ground that it disregarded genuine issues of fact. Because the substantive question is dispositive, we need not tarry over the procedural question. The substantive basis for the summary judgment was stated orally by the district judge as follows:

> As I read the answer in this case, the so-called counterclaim is merely a re-allegation of what has been labeled as a second defense in the answer. And, of course, it is fundamental on a motion for summary judgment that the responding party cannot rely upon pleadings in the file. As I recall, there is nothing in the file other than the bare allegations contained in the second defense and reiterated in the counterclaim relative to this so-called breach of fiduciary relationship or fraudulent conduct. And in the absence of affidavits and the absence of depositions specifically showing that, which is a matter which must be specifically shown, I have to say that there is no genuine issue of material fact raised by the second defense and, consequently, the counterclaim too.

The summary judgment, when entered, was accompanied by no further statement of the judge's reasoning. Thus, the judge's oral remarks frame a twofold issue: first, whether the record does, in fact, contain sworn averments in support of Thorpe's claim; and, second, whether such averments are sufficient to raise a genuine issue concerning a breach of fiduciary duty.

I

■ Contrary to the district judge's observation, the record prior to summary judgment contained sworn affidavits by Thorpe, one of her relatives, and a real estate appraiser. It also included affidavits by the broker and his salesman.[1] In an appeal from a summary judgment, we construe the record in the light most favorable to the party opposing the motion.

---

1. The record in the district court also may have contained other items not included in the record on appeal. First, the record of a separate proceeding, in which Thorpe's former husband challenged the value of the farm in their property settlement agreement, has been mentioned by counsel in argument below and on appeal; but it has not been included in the record before us. Second, the deposition of one of the buyers of Thorpe's farm, although mentioned in argument, is not in the record on appeal. Finally, Thorpe's deposition had been taken before the district court heard the motion for summary judgment; but it is not clear whether the deposition was timely filed. In any event it, too, is absent from the record on appeal. In our opinion today, we do not rely upon the purported contents of any of these items outside the appellate record.

*E.g., Keller v. Holiday Inns, Inc.*, 105 Idaho 649, 671 P.2d 1112 (Ct.App.1983). In this case, we construe the record and inferences from that record favorably to Thorpe.

Viewed in best light for Thorpe, the record shows that she owned a 600 acre farm in Lincoln County, Idaho. During the fall of 1976, she was experiencing financial difficulties. In October, although there was no listing agreement on the property, the broker's salesman showed the farm to potential buyers. The salesman returned to the farm later with an earnest money agreement signed by the buyers, offering to purchase the property for $273,000. Thorpe asked the salesman if that was a fair price. He said it was and urged her to accept the offer. Thorpe's cousin was present during the conversation and recalled the salesman saying that the $273,000 offer "was high considering the rundown condition of the ranch." However, Thorpe rejected the offer at that time because it provided for her to carry a balance unsecured by any mortgage on her property.

Later that same day, the salesman again returned—this time with a modified earnest money agreement providing for such a mortgage. After reinquiring as to whether $273,000 was a good price, and getting the same answer, Thorpe accepted the offer. Concurrently, she also signed an exclusive listing agreement on the property, agreeing to pay the broker a commission if he found a ready, willing and able buyer on terms conforming to the earnest money agreement or if she sold the property herself during the period covered by the listing agreement. According to Thorpe's cousin, the salesman did not inform Thorpe that he was also representing the buyers in a separate transaction where they were selling other property. The salesman's affidavit says he did make such a disclosure. In any event, it is undisputed that such dual representation did exist and that Thorpe's sale was made contingent upon the buyers' sale of the other property.

The salesman subsequently informed Thorpe that her sale was progressing toward a closing and that the buyers had obtained financing. However, after several weeks had elapsed, one of the buyers visited Thorpe at her home and told her that they had not sold their other property and would be unable to consummate the purchase of her farm. Having no other potential buyer, and having not done any fall work on the farm because she anticipated closing the sale, Thorpe became desperate. She feared that she would lose the property for failure to make payments owed to an institutional lender. She offered to sell the farm to the same buyers at a reduced price and on more favorable terms. The buyers accepted this new offer, purchasing the farm for $265,000. Later, in 1977, an independent appraiser valued the property at $392,000.

Although the foregoing sequence of events is disputed in important respects by the broker, it is clear that the record contains more than bare allegations in pleadings deemed inadequate by the district judge. Thorpe has made a particularized factual showing. It is not for us, on appeal from a summary judgment, to weigh the evidence. *E.g., Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 544 P.2d 306 (1975). Rather, our task is to determine whether the showing made by Thorpe, if believed, is sufficient to raise a genuine issue concerning breach of fiduciary duty. We turn now to that question.

## II

■ It is well established in Idaho case law that a real estate broker, as an agent, owes a fiduciary duty to the principal, his client. *E.g., Rogers v. Hendrix*, 92 Idaho 141, 438 P.2d 653 (1968); *McShane v. Quillin*, 47 Idaho 542, 277 P. 554 (1929). Recently, in *Mallory v. Watt*, 100 Idaho 119, 594 P.2d 629 (1979), the Idaho Supreme Court stated that because of this fiduciary duty, an agent must make "a full, fair, and timely disclosure to his principal of all facts within the agent's knowledge

which are, or may be, material to the transaction and which might affect the principal's rights and interests or influence his actions." 100 Idaho at 122, 594 P.2d at 632.

The law imposes upon a real estate broker a fiduciary obligation comprised of utmost good faith, integrity, honesty, and loyalty as well as a duty of due care and diligence. Romero, *Theories of Real Estate Broker Liability: Arizona's Emerging Malpractice Doctrine* 20 ARIZ. L.REV. 767, 769 (1978). *See also* RESTATEMENT (SECOND) OF AGENCY §§ 377, 379, 383 (1957). Breach of the fiduciary duty may result in the broker's loss of a commission and in liability for damages. *Meerdink v. Krieger*, 15 Wash.App. 540, 550 P.2d 42 (1976). A broker ultimately is responsible to the public for the actions of real estate sales persons whom he employs. *See Dep't of Employment v. Bake Young Realty*, 98 Idaho 182, 560 P.2d 504 (1977).

In this case, it is clear that, although the salesman initially contacted Thorpe on behalf of the buyers, he solicited and established an agency relationship between his broker and Thorpe concerning sale of the farm. Thorpe's allegation, that the broker—through the salesman—engaged in dual representation without disclosing it, implicates the fiduciary elements of honesty and loyalty. Her allegation that the broker—again through his salesman—misrepresented the value of her farm implicates the element of honesty if he intentionally understated the value, or the elements of due care and diligence if the misstatement was negligent. A broker is obliged to employ that degree of skill in his calling usually possessed by others in the same business. *See* Annot., 94 A.L.R.2d 468, 471 (1964); *Smith v. Carroll Realty Co.*, 8 Utah 2d 356, 335 P.2d 67 (1959) (upholding award of damages against broker who negligently failed to determine value of property for which clients were exchanging their property). The broker's conduct is required to meet a standard of competence because he is "issued a license

and permitted to hold himself out to the public as qualified by training and experience to render a specialized service in the field of real estate transactions." *Reese v. Harper*, 8 Utah 2d 119, 329 P.2d 410, 412 (1958). The law requires that he perform to a certain level of skill; for if he failed to do so, "instead of being the badge of competence and integrity it is supposed to be, the [broker's] license would serve only as a foil to lure the unsuspecting public in." *Id.*

Here a trier of fact permissibly could infer that had the salesman disclosed his dual representation, Thorpe would have placed lesser reliance upon his alleged assurances concerning the value of the farm and the progress toward closing the sale. The trier of fact also could infer, from the difference between the earnest money price of $273,000 and subsequent appraisal of $392,000, that the value of the farm had been intentionally or negligently understated. Accordingly, we hold that the record contains a genuine issue concerning breach of fiduciary duty.

Of course, our holding does not signify that a seller of real estate is entitled to receive damages, or to refuse to pay a commission, in every instance when he or she finds an appraiser who values the property above the selling price. A mere mistake in judgment as to the value of property, which does not result from lack of honesty or from lack of diligence that a reasonable broker would employ, is not a breach of fiduciary duty. Therefore, it imposes no liability upon the broker. *Smith v. Fidelity & Columbia Trust Co.*, 227 Ky. 120, 12 S.W.2d 276 (1928). However, in the present case, the interplay between dual representation and the large discrepancy in values raises an issue inappropriate for resolution by summary judgment.

In some instances, a seller's own conduct may represent a defense to broker liability or may sever the causal connection between any broker misconduct and ensuing damage. *See, e.g., Salem v. De Witt-Jenkins Realty Co.*, 113 N.E.2d 918 (Ohio App.1952) (broker erred in describing di-

mensions of property but seller was contributorily negligent in not knowing the dimensions of his own property). The question whether a seller has justifiably relied upon a broker's opinion on property value is a question of fact. *Phillips v. JCM Dev. Corp.*, 666 P.2d 876 (Utah 1983). In this case, there are countercurrents in the record. On one hand, Thorpe independently sold the farm to the buyers at a lesser price, and on more favorable terms, than had been arranged by the broker's salesman. On the other hand, Thorpe contends that she did so in continued reliance upon the salesman's opinion regarding the value of the farm and in desperate response to a predicament which the salesman had, in part, created. Upon the narrow record before us, and upon our limited standard of review in summary judgment cases, we are unable to say that the broker has demonstrated an entitlement to judgment as a matter of law.

We conclude that the district court erred by granting summary judgment on this record. The judgment is vacated and the cause remanded. Costs to appellant Thorpe. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.