IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| HPEP, LLC a Washington limited liability company,<br><br>      Plaintiff,<br><br> v.<br><br>QIAN MENG, an individual,<br><br>      Defendant.<br>_____<br><br>QIAN MENG, an individual,<br><br>      Appellant,<br><br> v.<br><br>RODNEY OLSON and JANICE OLSON, and their marital community,<br><br>      Defendants,<br><br>ELLEN WANG and JOHN DOE WANG, and their marital community; and COMPASS WASHINGTON, LLC, a Washington limited liability company,<br><br>      Respondents. | No. 83882-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — This case involves a dispute between residential property seller, Qian Meng, and her realtor, Ellen Wang. Meng sought the disgorgement of Wang's commission earned by selling Meng's property because Wang breached various

statutory duties under the Broker's Act, ch. 18.86 RCW. Because Meng did not incur any damages, we affirm the trial court's decision following a bench trial not to disgorge her commission. We also affirm the trial court's award of reasonable attorney fees to Wang.

FACTS

In 2020, Ellen Wang, a real estate agent representing Compass Washington, LLC (Compass), and Qian Meng had known each other since 2016. Wang represented Meng in buying a home in Bellevue and again when Meng later bought another home (the property) in the Hunts Point neighborhood. Meng leased the property to a tenant. Due to the relatively high prices of the properties, the pool of potential buyers for real estate on Hunts Point is generally limited. And because of the nature of the properties, many sales of Hunts Point residential properties are "off market" transactions, meaning they are not listed on the public Multiple Listing Service (MLS).

In June 2020, a potential confidential buyer through well-known real estate broker, Tere Foster, contacted Wang about the property. Wang notified Meng of the potential buyer to find out if she was interested in selling,[1] which she was. Meng indicated that she wanted $9 or $9.5 million for the property but agreed to go up to $11 million per Wang's recommendation. When Foster conveyed her client might make an offer, Wang told Meng that Wang would represent her as a seller's agent.

On September 1, 2020, Wang drafted and signed a Form 1A Exclusive Listing Agreement (listing agreement). The listing agreement created an agency relationship

---

[1] During the relevant time period of trying to sell the property, Meng was living in China. We mention this only to provide context that communication between Meng and Wang was from significantly different time zones.

2

between Meng and Wang[2] and gave Wang the exclusive right to sell the property from the time it was executed until October 31, 2020. It also provided that Wang would be entitled to a 4 percent commission for procuring any sale within the listing period. A provision of the listing agreement committed Wang to list the property on the MLS by 5:00 p.m. on September 1, 2020. The agreement also provided for reasonable attorney fees for the prevailing party in litigation to enforce the terms of the agreement.

The parties disputed the circumstances surrounding the execution of the listing agreement. Wang testified that she was just attempting to create a broker/commission relationship for purposes of a private/off-market sale, she used the wrong form, and she had no intent to list the property on the MLS. Wang explained to Meng that they were anticipating an offer being presented shortly through Foster.

Meng, however, testified that she believed Wang would list the property on the MLS as the language of the listing agreement provided despite the fact they anticipated an offer through Foster.

Foster's client initially expressed some interest in offering between $9.5 million and $11 million but eventually said they would not take any assignment of lease or holdover tenants, and thus would not be bringing an offer.

Eleven days later, Rod and Janice Olson (collectively the Olsons) reached out to Wang about the property. The Olsons had lived in the Hunts Point area for many years and had owned several homes on the Hunts Point peninsula. They both had extensive experience in residential real estate transactions. The Olsons, who did not need an agent and represented themselves, understood that Wang represented Meng. The

---

[2] For clarity, we refer to Wang and Compass collectively as "Wang."

3

Olsons told Wang they were interested in the property and would pay $10.8 million for it. Despite knowing at the time that Foster had not presented an offer, Wang told the Olsons that there was already an existing, pending offer at $11 million. The Olsons responded by drafting a real estate purchase and sale agreement (REPSA) for $11.2 million that was signed by their attorney on their behalf. Wang bragged to Meng about how Wang used a phantom competing offer:

> And the price is 200,000 more! I lied to [the Olsons] that there is another buyer who would pay 11 million. In fact, [Foster] told me that her customer would be less than this price. She told him then don't bother, that's why I haven't received the order from the other party.

However, after Wang procured the written $11.2 million offer, Meng told Wang that Meng's ex-husband did not want to sell the property at all.[3] The Olsons' offer expired on September 15. As of September 18, the house was off the market and it was clear Meng did not intend to sell the property. Then about three weeks later, the evening of October 10, Meng sent a text to Wang explaining that she convinced her ex-husband to sell the property. Meng asked if the potential buyers who made the last offer were still looking for a house. Within five hours, Wang had taken the Olsons' last $11.2 million offer that was signed by their attorney, changed the expiration date from September 18 to October 11, and sent it to Meng. Wang did so without the authorization from either the Olsons or their attorney. Meng promptly signed the revised REPSA without question.

---

[3] Although Meng was the sole owner of the property and her ex-husband continued to reside in China, Meng consulted with him frequently about real estate transactions including the sale that was the subject of this suit. Both Meng and her husband were real estate developers in China.

The next morning, Wang called the Olsons to see if they were still interested in the property. Wang did not tell the Olsons or their attorney that Meng had signed this contract or was willing to agree to their previous $11.2 million offer. To motivate the Olsons to increase their offer, Wang used an email she had received from a young local brokerage to suggest there were others interested in the property. Wang already knew that this young broker did not have a buyer and suspected that the brokerage was trolling for information.

The Olsons ultimately agreed to pay $11.5 million and had their attorney sign a new REPSA sent over by Wang. Wang then sent the signed offer to Meng, who signed it on October 11 without questioning why she received a new REPSA with a higher offer. Four days later, Wang sent Meng a seller representation agreement (SRA) confirming that Wang would receive the entire 4 percent commission for the sale to an identified buyer. The SRA did not require the property be listed in the MLS. Meng signed the SRA. Meng also agreed that the buyer would be HPEP, LLC (HPEP). The Olsons formed HPEP for the purpose of taking title to the property.

After executing the agreement to sell her property but before closing, Meng saw a news story that the Olsons had sold their Hunts Point home for $60 million. Meng recognized Rodney Olson's name in the article as the buyer of Meng's property. Without any basis, Meng believed that if the Olsons had received $60 million for their property, then she should get more for hers.[4] Meng turned to one of her other real

---

[4] The Olsons' home that sold for $60 million was a large property at the tip of Hunts Point Peninsula on Lake Washington. It was appraised at approximately $22 million. The $60 million sale was an outlier and not a comparable sale. Meng's property, selling at $11.5 million, sold higher than any other east-facing property. It was valued at $11.2 to $11.5 million on October 11, 2020 and appraised at $10.5 million on October 10, 2020.

estate brokers, who advised Meng of various theories by which she might avoid having to fulfill her contract and on how she might use the threat of recession to obtain a higher price.

Meng sent virtually identical letters to Wang and the title company in charge of closing the sale, explaining that she decided not to sell because the pandemic situation had caused her to reconsider her living situation, and she planned to move back and rebuild/remodel her house in the near future. The trial court found this to be an objectively untrue statement. Meng refused to sign any closing documents.

HPEP brought suit against Meng for specific performance. Meng asserted affirmative defenses, counterclaims, and crossclaims against the Olsons, HPEP, and Wang. The court dismissed Meng's counterclaims and affirmative defenses against the Olsons and HPEP at summary judgment. The court also dismissed, at summary judgment, Meng's claim against Wang for lost profit damages arising from her failure to list the property on the MLS. The court explained,

> Ms. Meng has failed to raise any genuine issue of material fact as to the price that her home would have fetched on the open market. The opinion of Richard Hagar fails to establish any metric by which the Court (or jury) could measure the value of Ms. Meng's home on the open market.

The remaining breach of contract claims and statutory and common law violations alleged by Meng against Wang were litigated in a bench trial. The trial court found that with respect to Meng, Wang breached her statutory duties under RCW 18.86.030(1)(a) by failing to act with reasonable skill and care when she

> 1) Presented Meng with a Listing Agreement instead of a Separate Sale Agreement in September 2020, then failed to comply with her contractual obligations under the listing agreement that she had provided by failing to list the property between September 1, 2020 and September 18, 2020.

> The Court also finds that no damages related to this breach have been proved.
>
> 2) Presented Meng with a forged [REPSA] on October 10, 2020. However, the Court also finds that no damages related to this breach have been proved.

The court also found,

> Wang also breached her statutory duties under RCW 18.86.030(1)(c) by failing to present the SRA [REPSA] in a timely manner. However, the Court also finds that no damages related to this breach have been proved. The Court does not find that the failure to transmit information concerning Emily Tachell's phishing inquiry constituted a breach of RCW 18.86.030(1)(c).

The trial court found that the evidence at trial did not establish any failure to deal with Meng honestly and in good faith. The court additionally found that the evidence did not establish a failure to disclose material facts with respect to Meng, or that Wang, with respect to Meng, had engaged in any unfair deceptive act or practice.

The trial court granted HPEP's request for specific performance. The court also dismissed all of Meng's third-party claims against Wang: breach of statutory duties under RCW 18.86.030 and RCW 18.86.40; violation of RCW 19.86 (Consumer Protection Act); breach of contract; fraud; and conspiracy to defraud.

The court concluded that Wang exclusively represented Meng and was not a dual agent. The court also concluded that brokers do not owe common law fiduciary duties and only owe statutory duties listed in chapter 18.86 RCW. The court concluded that to recover for a breach of a statutory duty, an injured party must demonstrate both cause in fact and legal causation, and that Meng's failure to establish causation or damages was fatal to her breach of a statutory duty claim. Thus, the court rejected Meng's request for disgorgement of Wang's commission. The court also denied Meng's

request for equitable indemnity, noting that she did not plead a cause of action for equitable indemnification.

The trial court also granted attorney fees and costs from Meng to Wang because Wang was the prevailing party under the terms of the listing agreement and SRA.

Meng appeals.

DISCUSSION

Findings of Fact

As an initial matter, Meng first contends that findings of fact 172 and 173 are actually conclusions of law unsupported by the evidence. We disagree that the challenged portions of findings 172 and 173 are conclusions of law, but agree that they are not supported by the evidence.

"Findings of fact are determinations of whether . . . evidence show[s] that something occurred or existed." (alteration in original) (internal quotation marks omitted) Casterline v. Roberts, 168 Wn. App. 376, 382, 284 P.3d 743 (2012). A determination made by a trial court through the process of legal reasoning from the significance of evidentiary facts is a conclusion of law as opposed to a finding of fact. Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc., 21 Wn. App. 194, 197 n.5, 584 P.2d 968 (1978). A finding of fact that is actually a conclusion of law will be treated as a conclusion of law and will stand if other findings of fact suffice to support such a conclusion. George E. Miller Lumber Co. v. Holden, 45 Wn.2d 237, 245, 273 P.2d 786 (1954). Conclusions of law, however characterized, are reviewed de novo. Hegwine v. Longview Fibre Co., 132 Wn. App. 546, 556, 132 P.3d 789 (2006) ("We review conclusions of law erroneously labeled as findings of fact de novo."). We treat

unchallenged findings as verities on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

Finding of fact 172 provided, "The evidence at trial did not establish any civil conspiracy or a failure to deal (with Meng) honestly and good faith." And finding of fact 173 stated, "The evidence did not establish a failure to disclose material facts. The evidence did not establish that with respect to Meng, Wang had engaged in any unfair or deceptive act or practice."

Whether Wang failed to deal with Meng honestly as well as whether evidence showed that Wang engaged in a deceptive act are factual determinations. The court made these determinations based on whether evidence supported them, and it did not utilize legal reasoning in order to determine them. Meng contends these findings of fact are incorrect, arguing that the court's additional unchallenged findings show that Wang was dishonest and deceptive with Meng. We agree that the evidence and the court's unchallenged findings contradict findings 172 and 173.

First, through finding of fact 170(2), the court found that Meng "[p]resented Meng with a forged [REPSA] on October 10, 2020." Second, through finding of fact 96, the court found that "she falsely lead [sic] her client, Meng, to believe that the Olsons ([their attorney]) had signed a contractual offer to purchase the property." The court's unchallenged findings establish that evidence did support that Wang was dishonest with Meng and engaged in deception with her. To find otherwise in findings 172 and 173 was error.

However, we disagree with Meng regarding the trial court's finding about Wang's failure to disclose material facts. Meng's entire argument rests on the fact Wang did not

disclose to Meng that she never listed the home, which was required under the listing agreement.

Meng first argues that the court orally ruled that Wang failed to disclose material facts. That is incorrect. The court did not orally conclude that Wang failed to disclose *material* facts. The court found that Wang was under a statutory obligation to disclose all existing material facts,[5] and also found that Wang did not list the property as she agreed to do in the listing agreement. But the court did not conclude orally or in its written findings and conclusions that such failure to do so was *material*. The court found that many Hunts Point residential properties are sold "off market," meaning they are sold privately without being listed publicly on the MLS. It was the initial contact from a potential buyer that caused Wang to enter into the listing agreement with Meng. Wang continued to pursue potential buyers, including securing one who paid over Meng's asking price. Meng does not assign error to the court's dismissal of her claim against Wang for lost profit damages arising from her failure to list the property on the MLS. Meng fails to present any argument as to how not listing the property was a *material* fact.

Instead, Meng focuses her argument on the deceptive acts Wang engaged in with the Olsons.[6] But failing to disclose Wang's lies to the Olsons is not failing to disclose a material fact to Meng. In fact, Wang's lies to the Olsons resulted first in an

---

[5] It appears the judge inadvertently referenced "RCW 26.030(1)," when it is evident from the context that the judge intended to refer to the statutory duties listed in RCW 18.86.030(1).

[6] Meng cites to the court's findings that Wang lied to the Olsons, altered the Olsons' original offer without obtaining their authorization, failed to tell the Olsons that Meng signed the altered (and thus unenforceable) offer, lied to the Olsons about a separate offer to obtain a $300,000 increase in their prior offer, and used an email from another realtor to motivate the Olsons to increase their offer.

increase of their first offer from $11 million to $11.2 million, and then later increasing to $11.5 million, which Meng accepted. It would be incredulous for Meng to suggest that Wang's failure to disclose to the Olsons that she had lied was material as to Meng when it was Meng who wanted to rescind the sale despite receiving a higher offer because of Wang's deception. We affirm the trial court's finding that evidence did not establish a failure to disclose material facts to Meng. Though the court erred in its findings of fact 172 and 173, the error was harmless.

<u>Disgorgement of Wang's Commission</u>

Meng contends that because the trial court determined that Wang breached her statutory duties under RCW 18.86.030(1), it should award disgorgement of Wang's commission to Meng. We disagree.

RCW 18.86.030 provides a list of the duties of brokers owe their principal.[7] The court concluded that Wang breached her statutory duties under RCW 18.86.030(1)(a)

---

[7] (1) Regardless of whether a broker is an agent, the broker owes to all parties to whom the broker renders real estate brokerage services the following duties, which may not be waived:
    (a) To exercise reasonable skill and care;
    (b) To deal honestly and in good faith;
    (c) To present all written offers, written notices and other written communications to and from either party in a timely manner, regardless of whether the property is subject to an existing contract for sale or the buyer is already a party to an existing contract to purchase;
    (d) To disclose all existing material facts known by the broker and not apparent or readily ascertainable to a party; provided that this subsection shall not be construed to imply any duty to investigate matters that the broker has not agreed to investigate;
    (e) To account in a timely manner for all money and property received from or on behalf of either party;
    (f) To provide a pamphlet on the law of real estate agency in the form prescribed in RCW 18.86.120 to all parties to whom the broker renders real estate brokerage services, before the party signs an agency agreement with the broker, signs an offer in a real estate transaction handled by the broker, consents to dual agency, or waives any rights,

and (1)(c). The court's findings also support a violation of RCW 18.86.030(1)(b) because Wang did not always deal honestly with Meng as discussed *supra*.

We review the legal standard of recovery de novo. Falcon Prop., LLC v. Bowfits 1308, LLC, 16 Wn. App. 2d 1, 8, 478 P.3d 134 (2020) (citing Young v. Young, 164 Wn.2d 477, 483, 191 P.3d 1258 (2008)). Effective January 1, 1997, chapter 18.86 RCW, known as the Broker's Act, established statutory duties that superseded the fiduciary duties of an agent to a principal under the common law. Beauregard v. Riley, 9 Wn. App. 2d 248, 255, 443 P.3d 827 (2019).

It is settled law that the vehicle for recovery for a breach of statutory duties under chapter 18.86 RCW is through common law tort. Falcon, 16 Wn. App. 2d at 8 (citing Jackowski v. Borchelt, 174 Wn.2d 720, 735, 278 P.3d 1100 (2012)). "To demonstrate that the defendant's breach was the proximate cause of the plaintiff's injury, the plaintiff must demonstrate both cause in fact and legal causation." Beauregard, 9 Wn. App. 2d at 255 (citing Boguch v. Landover Corp., 153 Wn. App. 595, 610, 224 P.3d 795 (2009)).

---

under RCW 18.86.020(1)(e), 18.86.040(1)(e), 18.86.050(1)(e), or 18.86.060(2) (e) or (f), whichever occurs earliest; and

(g) To disclose in writing to all parties to whom the broker renders real estate brokerage services, before the party signs an offer in a real estate transaction handled by the broker, whether the broker represents the buyer, the seller, both parties, or neither party. The disclosure shall be set forth in a separate paragraph entitled "Agency Disclosure" in the agreement between the buyer and seller or in a separate writing entitled "Agency Disclosure."

(2) Unless otherwise agreed, a broker owes no duty to conduct an independent inspection of the property or to conduct an independent investigation of either party's financial condition, and owes no duty to independently verify the accuracy or completeness of any statement made by either party or by any source reasonably believed by the broker to be reliable.

Meng does not challenge the court's conclusion that Meng failed to establish lost profits as damages, but argues that Wang's commission itself is damage. Meng cites no supporting authority for this proposition. When a party does not cite to supporting authority, we assume there is none. Kirby v. Dep't of Emp't Sec., 185 Wn. App. 706, 728, 342 P.3d 1151 (2014). Nor does Meng attempt to present any argument explaining how Wang's statutory breaches as to Meng caused her harm by having to pay Wang's commission. The commission is what Meng was contractually obligated to pay under the SRA, which flowed from the REPSA executed on October 10 for $11.5 million.

Meng next argues without any supporting authority that the commission should be disgorged under a general theory of "equity" based on the statutory breaches.[8] Meng contends she raised this argument by requesting in her amended third-party complaint that Wang be enjoined from seeking or recovering any commission or other monetary relief due to her breaches of statutory duties. While Meng requested relief in her amended third-party complaint to include enjoining Wang from seeking or recovering any commission or other monetary relief in connection with the property, she did not specify that this was based on breaches of statutory duties.

All of the conduct related to the statutory violations flowed from the listing agreement and the unauthorized revised October 10 REPSA for $11.2 million, while Wang's commission was based out of the SRA. As the court observed:

---

[8] Despite the trial court's election to address how Meng also cannot recover under an unjust enrichment theory, Meng never pleaded or argued a theory of unjust enrichment at trial or on appeal. And, as the trial court pointed out, Meng did not plead equitable indemnity. Meng does not assert equitable indemnity on appeal. Meng maintains that its request for equitable remedies is different from equitable indemnity.

> Meng signed the $11.5 million offer on October 11, 2020 (Pacific Time.) She signed and initialed the full Residential Real Estate Purchase and Sale Agreement, and all addenda (the [property contract]) at least 22 times, on nearly each page of the contract. This Court concludes that Meng made the decision to sell the [Property] and signed the [Contract] voluntarily. No one forced her to sign the contract. She was happy with the purchase price and her windfall of an additional $300,000.

Setting aside the fact Meng cites to no authority to support her general equitable remedy theory, Meng has not presented any arguments as to why, under these facts, it would be equitable to have Meng keep the entire $11.5 million that Wang helped secure under the agreement through which Wang would be paid a 4 percent commission. Meng's general equitable theory would allow sellers or buyers to disgorge the commission of their own agents for minor statutory violations that do not cause injury— even when the agents successfully secure a purchase and sale agreement to the benefit of their principal.[9]

Because disgorgement of Wang's commission is not an available remedy when there are no damages, we affirm the trial court's denial of Meng's request for disgorgement of Wang's commission.

---

[9] At oral argument Meng contended that disgorgement for statutory violation without having to prove damages is supported by Restatement (Second) of Agency § 401 (Am. Law Inst. 1958). Wash. Court of Appeals oral argument, HPEP, LLC, v. Qian Meng, No. 83882-2-I (April 13, 2023), at 19 min., 45 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?clientID=9375922947&eventID=2023041160. However, Meng only made passing reference to the Restatement in her brief when she cited Meerdink v. Krieger, 15 Wn. App. 540, 545, 550 P.2d 42 (1976) ("An agent is subject to liability for any loss to the principal arising from breach of duty" (citing RESTATEMENT § 401)." We need not address this argument further. See RAP 10.3(a)(6) (requiring an appellant's brief to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"); see also Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 845, 347 P.3d 487 (2015).

Attorney Fee Award to Wang

Meng also contends that the court improperly concluded that Wang was the substantially prevailing party for purposes of attorney fees. We disagree.

We review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or under a recognized ground. Falcon, 16 Wn. App. 2d at 11. A prevailing party may recover attorney fees under a contractual fee-shifting provision only if a party brings a "claim on the contract," or in other words, only if a party seeks to recover under a specific contractual provision. Boguch, 153 Wn. App. at 615. If a party alleges breach of a duty imposed by statute, the party does not bring an action on the contract, even if the duty would not exist in the absence of the contractual relationship. Id. (citations omitted).

The trial court awarded Wang attorney fees under both the listing agreement and the SRA, which have the exact same fee-shifting provision:

> In the event either party employs an attorney to enforce any terms of this Agreement and is successful, the other party agrees to pay reasonable attorneys' fees. In the event of trial, the successful party shall be entitled to an award of attorneys' fees and expenses; the amount of the attorneys' fees and expenses shall be fixed by the court.

Additionally, RCW 4.84.330 provides that in any action on a contract, "where such contract . . . specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract. . . shall be awarded to one of the parties, the prevailing party. . . shall be entitled to reasonable attorneys' fees."

Meng first argues that because Wang breached the listing agreement, attorney fees should not have been awarded under that agreement.

If neither party wholly prevails, the determination of who is the prevailing party "depends upon who is the substantially prevailing party, and this question depends upon the extent of the relief afforded the parties." Riss v. Angel, 131 Wn.2d 612, 633, 934 P.2d 669 (1997). Whether a party is a prevailing party is a mixed question of law and fact that this court reviews under an error of law standard. Emerick v. Cardiac Study Ctr., Inc., P.S., 189 Wn. App. 711, 732, 357 P.3d 696 (2015).

Here, Meng prevailed as to her claim that Wang breached the listing agreement by not listing the property. However, that breach was not a material breach and Meng failed to prove damages, causing that breach of contract claim to be dismissed. Meng claimed that the sale to HPEP was void and unenforceable because HPEP conspired with Wang to deceive Meng into agreeing to sell the property for less than its fair market value. As a remedy, Meng sought an order enjoining Wang from recovering any commission, which Meng agreed to under the SRA which flowed from the final REPSA. All of Meng's claims against Wang were dismissed. Wang was the substantially prevailing party, and as such, the trial court did not err in awarding attorney fees to Wang as the prevailing party under the SRA.

Meng contends that Wang should not receive attorney fees because Wang violated statutory duties under chapter 18.86 RCW. However, the court did not award attorney fees based on the statute. See Boguch, 153 Wn. App. at 615 (reversing an award of attorney fees based on common law and statutory duties of care rather than a claim on the contract). We note that the trial court determined that the fees and expenses that Wang incurred defending Meng's extra-contractual claims are so

16

intertwined with the central, contract-based claims that the fees and costs could not be segregated. Meng does not challenge this finding on appeal.

Meng also argues for the first time on appeal that it is inequitable for Wang to be awarded attorney fees when she induced Meng to sign the SRA without disclosing its purpose or meaning to Meng. First, it is not altogether clear what Meng refers to by saying "disclosing its purpose and meaning." Meng does not claim she did not understand that she was agreeing to pay Wang a 4 percent commission based on the sale of the property. Second, while Meng claimed below that Wang induced Meng to engage Wang as her broker and induced Meng to sign the REPSA,[10] she did not claim that Wang induced Meng to sign the SRA. We decline to consider this waived argument. "As a general rule, appellate courts will not consider issues raised for the first time on appeal." State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995).

Because we affirm the trial court's award of attorney fees to Wang under the SRA, we need not address the trial court's award of fees also under the listing agreement.

<u>Attorney Fees on Appeal</u>

Meng and Wang request attorney fees based on the attorney fees provision under the listing agreement, the SRA, or both. In general, this court recognizes a provision in a contract allowing attorney fees to include fees on appeal as well as at

---

[10] See Meng's amended answer, affirmative defenses, counterclaim and third-party complaint ("Wang's and Compass's unfair or deceptive acts or practices in the conduct of trade or commerce induced Meng to engage them as her brokers in order to enter into a transaction with [the Olsons]."); Meng's opposition to Wang's motion for summary judgment ("As a result of Wang's inducement, Meng entered into the [REPSA] with the Olsons on October 11, 2020"); Meng's trial brief ("Wang facilitated the Olsons' purchase of the Property and induced Meng to execute the REPSA with her dual agency, omissions, and in light of her breaches of statutory duties.").

trial.  Falcon, 16 Wn. App. 2d at 14 (citing Edmundson v. Bank of Am., NA, 194 Wn. App. 920, 932-33, 378 P.3d 272 (2016)).

As discussed *supra*, Meng on appeal successfully corrects the trial court's two findings of fact, which supports a determination that Wang was dishonest and engaged in deceit as to Meng in violation of a statutory duty to deal honestly with Meng.  RCW 18.86.030(1)(b).  However, this does not result in a judgment in Meng's favor.  Meng failed to otherwise improve her position as to her other claims on appeal.

We conclude that neither party substantially prevailed on appeal and deny all parties the request for attorney fees.  See Falcon, 16 Wn. App. 2d at 14 (declining to award attorney fees on appeal when both parties prevailed in part).

## CONCLUSION

Though the trial court erred in finding that Wang did not engage in deceptive or dishonest practices with Meng, those findings contradicted the trial court's other findings of fact as to how Wang was dishonest and engaged in deception as to Meng.  These errors were harmless because statutory violations require an injured party to establish damages and Meng failed to do so.  We affirm the trial court's denial of Meng's request to disgorge Wang's commission.  Because neither party substantially prevailed, we decline to award attorney fees to any party.

_____
Coburn, J.

WE CONCUR:

_____          _____
Birk, J.                                                      Mann, J.

18